THOMPSON, Judge.
This appeal involves an adoption contest between two sets of foster parents. On September 23, 2002, G.C. and J.C. filed in the Probate Court of Randolph County (“the probate court”) a petition seeking to adopt B.C.T. and C.A.T. (hereinafter together referred to as “the children”), who had been in G.C. and J.C.’s care as foster children between May 2000 and November 2001. At the time G.C. and J.C. filed that adoption petition, an action to terminate the mother’s parental rights was pending in the Circuit Court of Randolph County (that court was acting as a juvenile court and is hereinafter referred to as “the juvenile court”). The children were living with K.P. and C.P., another set of foster parents, at the time G.C. and J.C. filed their petition for adoption; the children had been in the home of K.P. and C.P. since November 2001.
Along with their petition to adopt the children, G.C. and J.C. filed a consent to the adoption executed by the children’s mother, B.A.T. (“the mother”); that consent document was dated September 20, 2002. On October 1, 2002, the juvenile court entered a judgment terminating the mother’s parental rights. Although she had executed the consent-to-adoption document, the mother appealed the judgment terminating her parental rights.
On October 2, 2002, the Department of Human Resources (“DHR”) filed an objection to the petition for adoption filed by G.C. and J.C. In that objection, DHR contended that because it had custody of the children, its consent to an adoption was *753 required under § 26-10A-7(a)(4), AJa.Code 1975. The probate court continued its consideration of the petition for adoption until the resolution of the mother’s appeal of the judgment that terminated her parental rights. The probate court later transferred the adoption proceeding pending before it to the juvenile court.
Thereafter, the mother dismissed her appeal of the judgment terminating her parental rights. On December 19, 2002, the juvenile court entered an order remanding the adoption proceeding to the probate court. On that same date, K.P. and C.P. filed petitions in the probate court seeking to adopt the children. Also on December 19, 2002, K.P. and C.P. filed in the probate court a separate motion contesting the adoption of the children by G.C. and J.C. In their motion contesting the adoption of the children and in their petitions to adopt the children, K.P. and C.P. alleged that DHR had consented to their petitions to adopt the children. The record contains a document indicating that on December 20, 2002, DHR consented to K.P. and C.P.’s adopting the children.
The probate court conducted an ore ten-us hearing on January 9, 2003. On January 13, 2003, the probate court entered several judgments pertaining to this matter. In one January 13, 2003, judgment, the probate court made certain factual findings and concluded, among other things, that G.C. and J.C. were entitled to adopt the children. The probate court based that finding in large part upon its determinations that DHR had unreasonably withheld its consent to G.C. and J.C.’s adopting the children and that that adoption would serve the children’s best interests. See § 26-10A-7(a)(4), Ala.Code 1975. The probate court also entered a judgment entitled “Final [Judgment] of Adoption” in which it determined that there was no need to conduct a dispositional hearing as provided for in § 26-10A-25, Ala.Code 1975; that January 13, 2003, judgment contained findings made in compliance with § 26-10A-25(b), Ala.Code 1975.[1] Also on January 13, 2003, the probate court entered two separate judgments commending K.P. and C.P. for their service as foster parents for the children, but denying their petitions to adopt the children.
In the materials they filed with this court, G.C. and J.C. contend that the probate court’s judgments denying K.P.’s and C.P.’s petitions to adopt the children were entered in a separate action, which was assigned a different case number than was their action. However, the judgments in the record on appeal that apparently pertain only to the adoption petitions filed by K.P. and C.P. do not contain any probate court case numbers. Also, in an April 15, 2003, order, the probate court entered a ruling on a request by DHR to supplement the record on appeal to include certain filings and evidence pertaining to KP.’s and C.P.’s petitions to adopt the children. In that order, the probate court stated that the “petitions [filed by K.P. and C.P.] were heard at the same time as the petition filed by ... G.C. and J.C., and that [K.P. and C.P.] properly and timely filed an appeal from this court to the Alabama Court of Civil Appeals [and] raised as one of [their] issues the [allegedly] improper denial by this court of their petitions.” (Emphasis added.)
DHR filed a timely notice of appeal of the probate court’s January 13, 2003, judgments, and G.C. and J.C. cross-appealed. *754 K.P. and C.P. also timely appealed the probate court’s judgments; G.C. and J.C. did not cross-appeal as to KP. and C.P.’s appeal. This court consolidated the two appeals and the cross-appeal. While the matter was pending in this court, on the motion of DHR and G.C. and J.C., this court dismissed DHR’s appeal and the cross-appeal. Therefore, only the appeal filed by K.P. and C.P. is currently before this court.
After this court dismissed DHR’s appeal and G.C. and J.C.’s cross-appeal, G.C. and J.C. filed a motion in this court seeking to dismiss the appeal filed by KP. and C.P. In that motion to dismiss, G.C. and J.C. contended that K.P. and C.P. did not have standing to appeal because, G.C. and J.C. maintain, the probate court entered its judgments under two different case action numbers; they contend that K.P. and C.P. have standing to appeal only those two judgments that purportedly ruled on their separate adoption action. However, as stated earlier, the copies of the judgments to which G.C. and J.C. refer do not contain case numbers indicating that the probate court was ruling in a separate action, and the April 15, 2003, order indicates that the probate court considered the two actions together. Therefore, given the orders and judgments contained in the record on appeal, we cannot say that G.C. and J.C. have established that KP. and C.P. lacked standing to appeal the judgments in favor of G.C. and J.C. The motion to dismiss KP. and C.P.’s appeal is therefore denied.
The evidence presented at the ore tenus proceeding indicates that the children were removed from the mother’s custody in 1999; they have remained in DHR’s custody since that time. The children have a third sibling who has remained in the foster home in which she and the children were first placed. The record indicates that the children were removed from that first foster home because of their behavioral problems.
The children were placed in the home of G.C. and J.C. in May 2000. G.C. and J.C. testified that they both loved the children and that they wanted to adopt both children. Shay Bradford, a DHR social worker, testified, however, that J.C. had repeatedly stated that the couple wanted to adopt only one of the children, C.A.T., the girl. G.C. and J.C. testified that they noticed behavioral problems in the other child, B.C.T., a boy. G.C. and J.C. had raised two sons. One of their sons had attention deficit hyperactivity disorder (“ADHD”), and the couple suspected that B.C.T. also had ADHD. G.C. and J.C. testified, however, that when they asked for help with B.C.T.’s behavioral problems, DHR was not responsive. However, Bradford testified that she was not informed of the problems until June 2001 and that J.C. reported to her that she waited to report the problems with B.C.T. because she was worried DHR would remove C.A.T., as well as B.C.T., from the home.
Bradford testified that the first appointment she could obtain to have B.C.T. tested was in January 2002. However, in November 2001, G.C. and J.C. became frustrated with DHR’s handling of the case and requested that the children be removed from their home. J.C. testified at the trial that that request was a “bad decision.”
After their removal from the home of G.C. and J.C., the children were placed in the home of K.P. and C.P. The children progressed well in that placement. In addition, B.C.T. was tested and placed on medication for ADHD. Both children were doing well academically and behaviorally at the time of the trial in this matter.
*755 K.P. and C.P. testified that they loved the children and wanted to adopt them. They stated that DHR had instructed them to wait to file a petition to adopt the children until after the resolution of the mother’s appeal of the termination of her parental rights and that, when the mother dismissed her appeal in that matter, they immediately filed their adoption petitions.
K.P.’s income declined shortly before the children were placed in his and C.P.’s home. As a result of that decrease in income, K.P. and C.P. eventually filed for bankruptcy protection. At the time of the trial of this matter, C.P.’s son and his three children, in addition to the children at issue in this case, were living with K.P. and C.P. in a four-bedroom, two-bath house. K.P. and C.P. were assisting with paying the grandchildren’s expenses.
During the time that the children were placed in K.P. and C.P.’s home, G.C. and J.C. befriended the mother and allowed her to live in their home for approximately six months. There was also evidence that G.C. and J.C. promised the mother that they would construct a house on their land for her use, but J.C. insisted that that offer was made in the event the mother’s parental rights were not terminated and the children were returned to her. At the trial, G.C. and J.C. did not rule out the possibility that they would continue to allow the mother to visit the children if they were allowed to adopt the children.
Also during the time the children were in the home of K.P. and C.P., C.A.T. made allegations that she had been improperly touched by one of G.C. and J.C.’s sons. DHR’s investigation of those allegations concluded that that report was “not indicated.” However, Bradford testified that those allegations, because they came from the child, were part of the reason for DHR’s decision to refuse to consent to G.C. and J.C.’s adoption of the children.
In the first part of their brief on appeal, K.P. and C.P. argue that the probate court erred in finding that DHR had unreasonably withheld its consent to the adoption of the children by G.C. and J.C. Section 26-10A-7(a)(4), Ala.Code 1975, provides that a court may grant a petition for adoption without DHR’s consent to the adoption if the court finds that DHR’s refusal to consent to the adoption is unreasonable and not in the child’s or children’s best interests.
G.C. and J.C. filed in this court a motion to strike that portion of K.P. and C.P.’s brief on appeal that addresses whether DHR’s consent to G.C. and J.C.’s adoption of the children was unreasonable. In that motion, G.C. and J.C. contend that K.P. and C.P. are not the proper parties to raise that issue and that only DHR could argue that issue. K.P. and C.P. did not respond to that motion.
To be a proper party, “a person must have an interest in the right to be protected.” Eagerton v. Williams, 433 So.2d 436, 447 (Ala.1983). Also, “[a]s a general rule, ‘a litigant may not claim standing to assert the rights of a third party.’ ” Ex parte Izundu, 568 So.2d 771, 772 (Ala.1990) (quoting Jersey Shore Med. Ctr.-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 144, 417 A.2d 1003, 1006 (1980)). In this case, K.P. and C.P. contend that the probate court erred in concluding that DHR improperly withheld its consent to G.C. and J.C.’s adoption of the children. That factual finding, however, pertains solely to DHR’s rights in the present action. Although it might be argued that that finding resulted in the denial of the petitions for adoption filed by K.P. and C.P., the record does not necessarily support that conclusion. The probate court could have determined that DHR unreasonably withheld its consent to the adop *756 tion by G.C. and J.C., and it could have still faced the determination of which of the two sets of foster parents should be the adoptive parents. The probate court, in spite of its finding that DHR unreasonably withheld its consent, could still have denied G.C. and J.C.’s petition for adoption. We conclude that the finding that DHR unreasonably withheld its consent to the adoption of the children by G.C. and J.C. does not create in K.P. and C.P. a right that they have an interest in protecting such as would entitle them to advance an argument on behalf of DHR. Therefore, we do not consider the issue whether the evidence supported the probate court’s determination that DHR had unreasonably withheld its consent to the adoption of the children by G.C. and J.C. Although we reach this conclusion, we deny G.C. and J.C.’s motion to strike the portion of K.P. and C.P.’s brief that asserted this argument, and we construe both of the arguments in K.P. and C.P.’s appeal as asserting that the probate court should have entered judgments allowing them to adopt the children. Pursuant to § 26-10A-25(b), Ala.Code 1975:
“the court shall grant a final [judgment] of adoption if it finds on clear and convincing evidence that:
“(1) The adoptee has been in the actual physical custody of the petitioners for a period of 60 days, unless for good cause shown, this requirement is waived by the court;
“(2) All necessary consents, relin-quishments, terminations or waivers have been obtained and, if appropriate, have been filed with the court;
“(3) Service of the notice of pendency of the adoption proceeding has been made or dispensed with as to all persons entitled to receive notice under Section 26-10A-17;
“(4) All contests brought under Section 26-10A-24 have been resolved in favor of the petitioner;
“(5) That each petitioner is a suitable adopting parent and desires to establish a parent and child relationship between himself or herself and the adoptee;
“(6) That the best interests of the adoptee are served by the adoption; and
“(7) All other requirements of this chapter have been met.”
In its judgments, the probate court found that, for good cause shown, the requirement that the children be in the custody of G.C. and J.C., see § 26-10A-25(b)(1), has been waived; that all consents had been obtained, see § 26-10A-25(b)(2); that the required notices had been sent, see § 26-10A-25(b)(3); that the contest had been resolved in favor of G.C. and J.C., see § 26-10A-25(b)(4); that G.C. and J.C. were suitable adoptive parents and that it was in the children’s best interests for the probate court to allow G.C. and J.C. to adopt the children, see § 26-10A-25(b)(5) and (6). In their brief on appeal, K.P. and C.P. do not raise any issue pertaining to the procedural history of the case or the probate court’s conclusions pertaining to subsections (1) through (4) of § 26-10A-25(b), Ala.Code 1975. K.P. and C.P.’s arguments on appeal pertain to the suitability of G.C. and J.C. to serve as adoptive parents and whether G.C. and J.C.’s adoption of the children is in the children’s best interests.
In support of their argument that G.C. and J.C. are not suitable adoptive parents for the children, K.P. and C.P. cite the request by G.C. and J.C. that the children be removed from their home; their alleged desire to adopt only one of the children; and the allegations C.A.T. made against one of J.C.’s sons. In support of their argument that they are more suitable adoptive parents, K.P. and C.P. cite the *757 improvements and progress the children have made while in their home, and they contend that there is nothing in the record that could justify the denial of their petitions to adopt the children.
Where a probate court hears ore tenus evidence on a petition for adoption, its findings and conclusions based on that evidence are presumed to be correct. C.C.K. v. M.R.K., 579 So.2d 1368 (Ala.Civ.App.1991). In such a case, the probate court’s judgment will not be set aside absent a showing that it was palpably wrong and amounted to an abuse of the court’s discretion. Samek v. Sanders, 788 So.2d 872 (Ala.2000); C.C.K v. M.R.K., supra. In this case, the children were fortunate to have two sets of prospective adoptive parents who love and want them. However, the probate court had to make a choice between the two sets of petitioners. The facts emphasized by K.P. and C.P. in their brief are not favorable to G.C. and J.C.’s adoption of the children. However, the testimony in the record on appeal may be construed in a manner that would allow the probate court to view as plausible G.C. and J.C.’s explanations of some of the evidence that might be said to be detrimental to their case. Also, the evidence indicates that, in addition to their financial difficulties, K.P. and C.P. were providing a home and some level of support to C.P.’s son and his three children, and that they expected to continue to do so until the son found employment. That evidence tends to support a conclusion that, as between the two sets of petitioners, the home of G.C. and J.C. was, at the time of the proposed adoptions, more suitable for the children. Given the evidence in the record, this court might not have reached the same result as did the probate court. However, given the applicable standard of review, we cannot say that the probate court’s judgments allowing G.C. and J.C. to adopt the children amounted to an abuse of discretion. C.C.K. v. M.R.K., supra.
We note that K.P. and C.P. briefly maintained in their brief on appeal that the probate court improperly admitted two pieces of documentary evidence: a letter from DHR indicating that the accusation by C.A.T. against one of G.C. and J.C.’s sons was “not indicated,” and a personal recommendation by a friend of G.C. and J.C.’s. As to the arguments pertaining to the admission of that evidence, K.P. and C.P. cite to no supporting authority, in contravention of Rule 28, Ala. R.App. P. Also, the record fails to demonstrate that K.P. and C.P. objected to the admission or consideration of that evidence. Therefore, we cannot say that they have demonstrated error with regard to those brief arguments.
AFFIRMED.
CRAWLEY and PITTMAN, JJ., concur.
YATES, P.J., concurs in the result.
MURDOCK, J., dissents.

. The parties have raised no issues with regard to any procedural errors, such as not conducting a dispositional hearing; therefore, we do not reach any such issues in this opinion.