BOLIN, Justice.
A.M.P., the biological mother of S.L.S. (“the mother”), filed a petition for a writ of mandamus, seeking an order setting aside the probate court’s interlocutory order granting the petition of the foster parents, E.W.H. and S.M.H., to adopt S.L.S. (“the child”) (case no. 1061010). While the mother’s petition for the writ of mandamus was pending, the probate court entered a final order granting the adoption petition of the foster parents. Subsequently, the mother filed an appeal from the probate court’s final order (case no. 1061013). W.P. and P.P., the child’s maternal great-uncle and his wife, also appeal from the probate court’s final order of adoption (ease no. 1061170). We dismiss AJVLP.’s petition for the writ of mandamus, and we affirm the order of adoption.

Facts and Procedural History

The child was born in another state in December 1999. When the child was born, both the mother and the child tested positive for opiates. The mother refused drug treatment and social services, and a hearing was scheduled on the child’s welfare in that state. The mother fled with the child to Alabama. In April 2000, the Alabama Department of Human Resources (“DHR”) received a report of abuse or neglect from the social services department of the child’s birth state regarding the child.
In May 2000, DHR took temporary custody of the child pursuant to an order of the juvenile court. The mother was allowed to maintain physical custody of the child after the mother agreed to attend a drug-treatment facility. She entered the facility but after a short time left the facility, taking the child with her. The mother returned to the child’s birth state and left the child with an unrelated individual there. The mother could not be located, and a DHR employee went to the state and brought the child back to Alabama.
The child was placed in the custody of S.B., a maternal great-aunt of the child. The maternal great-aunt could not be a permanent placement for the child, and DHR allowed the great-aunt to place the child with friends of hers, E.W.H. and S.M.H. In July 2000, E.W.H. and S.M.H. became provisionally licensed as the child’s foster parents. As foster parents, E.W.H. and S.M.H. signed an agreement with DHR and, as part of that agreement, agreed as follows:
“That the State Department of Human Resources has full responsibility and authority for making and carrying out any and all plans for the children pertaining to adoption, without interference on our part, and that said Department has full responsibility and authority for making and carrying out any and all plans for children pertaining to transfer to other homes, return to relatives, etc., without interference on our part.
*1011 We further agree to cooperate with the Department of Human Resources requested by that Department in carrying out plans for the children.
“That we will not file a petition in the court to adopt a child in our home, or take steps toward the adoption of the child, without the WRITTEN CONSENT of the State Department of Human Resources.”
(Capitalization in original.)
In January 2001, DHR developed the first of several individualized service plans (“ISP”) for the child with the goal of permanent placement of the child with a relative. DHR contacted the child’s putative father, who was incarcerated, on several occasions; he did not express an interest in caring for the child. The mother by this time was also incarcerated and unable to care for the child. Subsequently, both the maternal grandmother, A.T., and the maternal grandfather, D.P., who were at that time divorced from one another, filed separate petitions for custody of the child, alleging that the child was dependent. The child has three older siblings: one sibling lives with the maternal grandmother; one sibling lives with the maternal grandfather; and the third sibling Uves with another relative.
In 2003, the juvenile court held a hearing on the grandmother’s and grandfather’s petitions. The foster parents obtained legal counsel, and counsel was allowed to participate in the juvenile court proceedings, although the foster parents had not filed a petition for custody of the child. Instead, the foster mother indicated that she did not feel that the grandfather and grandmother were suitable custodial parents for the child. In December 2003, the juvenile court denied both grandparents’ petitions for custody. Both the grandmother and the grandfather filed separate appeals. On November 5, 2004, the Court of Civil Appeals affirmed the judgment of the juvenile court in each appeal, without an opinion. A.T. v. Cullman County Dep’t of Human Res., 921 So.2d 478 (Ala.Civ.App.2004) (table); D.P. v. Cullman County Dep’t of Human Res., 921 So.2d 478 (Ala.Civ.App. 2004) (table). The grandfather petitioned this Court for certiorari review. On March 11, 2005, this Court denied the grandfather’s petition, without an opinion. Ex parte D.P., 924 So.2d 805 (Ala.2005) (table).
Following the juvenile court’s order denying the grandparents’ petitions for custody of the child, DHR continued to develop an ISP for the child so that she could be placed with a relative. We note that since November 2001 the child has visited with the maternal great-grandmother, B.P., every Wednesday. In October 2004, the child began having Tuesday afternoon visits with W.P. and P.P., a maternal great-uncle and his wife, after they came forward as a relative resource for adoption, and the child began spending the first full weekend of every month with the great-uncle and great-aunt. Also in October 2004, one weekend each month, the child had weekend visitation with the maternal great-grandmother. While the child was visiting with the great-grandmother, the child also was able to visit with her sister, who resides with a relative who lives near the great-grandmother.
On March 18, 2005, the foster parents filed a petition in the probate court to adopt the child. On March 22, 2005, DHR held a meeting with the great-uncle and great-aunt and the foster parents regarding the child’s ISP. On June 30, 2005, DHR was notified that the foster parents had filed a petition to adopt the child. On August 1, 2005, the probate court held a hearing on the petition and entered an *1012 interlocutory order granting the foster parents’ petition.[1] It appears that after the interlocutory order was entered, the foster parents stopped allowing the child to visit any of the relatives.
On September 7, 2005, the great-uncle and great-aunt filed a petition in the probate court seeking to adopt the child. Attached to their petition was a written consent signed by the mother, consenting to the adoption of the child by the great-uncle and great-aunt. On September 8, 2005, the mother filed a motion to set aside the interlocutory order granting the foster parents’ petition of adoption on the ground that the foster parents had not obtained her consent to the adoption; the probate court denied the mother’s motion. On September 16, 2005, the great-uncle and great-aunt filed a motion contesting the adoption and a motion to transfer the case to the juvenile court, pursuant to § 26-10A-3, for the limited purpose of terminating the parents’ rights. They also moved the probate court, under § 26-10A-21, to stay the adoption proceeding because the child was the subject of related proceedings in the juvenile court.
On October 11, 2005, a hearing was held at which the foster parents, DHR, and the great-uncle and great-aunt appeared with counsel and the mother was represented by counsel. The putative father did not appear and was not represented by counsel, even though he was served with notice of the adoption by publication.[2] Evidence was presented indicating that the mother had been incarcerated on and off for several years of the child’s life, although the evidence was conflicting as to the total time the mother had been incarcerated. There was evidence indicating that the mother had written the child several letters and had occasionally contacted the foster parents regarding the child until sometime in 2001. Evidence was presented indicating that the mother had telephoned the child when the child was visiting with relatives. The prison ministry where the mother was incarcerated had sent the child and her siblings gifts from the mother. There was evidence indicating that the mother was released on probation in 2004 and that she was thus free for a short period but that she did not attempt to see the child during that time.
The great-aunt testified that she and her husband did not come forward sooner seeking to adopt the child because the grandfather and grandmother had both been seeking custody of the child and she thought a competing petition for adoption would cause discord in the family. There was ample evidence presented indicating that both the foster parents and the great-uncle and great-aunt would provide a loving home for the child.
On October 21, 2005, the mother filed a petition for a writ of mandamus in the Court of Civil Appeals, seeking an order compelling the probate court to set aside its interlocutory order of adoption and to *1013 transfer the foster parents’ petition for adoption to the juvenile court, pursuant to § 26-10A-3. On October 25, 2005, DHR filed a motion in the probate court stating that before the foster parents could proceed with their adoption petition, they needed the consent of the parents or a termination of parental rights.
On November 8, 2005, the probate court entered a final order granting the foster parents’ petition to adopt the child. On November 18, 2005, the mother filed in the Court of Civil Appeals a motion to stay the final order of adoption pending the outcome of the mother’s petition for a writ of mandamus. On November 22, 2005, the mother appealed the final order of adoption to the Court of Civil Appeals. On November 22, 2005, the great-uncle and great-aunt filed a motion for a new trial, which the trial court never ruled upon. On December 6, 2005, the Court of Civil Appeals denied the mother’s motion to stay as premature. On December 16, 2005, the great-uncle and great-aunt appealed to the Court of Civil Appeals.[3] In January 2006, the Court of Civil Appeals consolidated the three cases. On April 27, 2007, the Court of Civil Appeals transferred the consolidated cases to this Court, pursuant to § 12-3-15, Ala.Code 1975.[4]

The Mother’s Petition for the Writ of Mandamus (case no. 1061010)

On October 21, 2005, the mother filed a petition for a writ of mandamus compelling the probate court to set aside its interlocutory order of adoption and to transfer the foster parents’ adoption petition to the juvenile court because the mother had not consented to the adoption of the child by the foster parents. The mother contends that § 26-10A-3 supports a transfer to the juvenile court because it provides that if any party whose consent is required fails, or is unable, to consent to the adoption, the proceeding will be transferred to the juvenile court for a termination of parental rights. The mother further contends that because the probate court did not obtain her consent to the adoption by the foster parents and because *1014 her parental rights had not been terminated, the probate court never obtained jurisdiction to enter the interlocutory order of adoption.
“ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ” Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995)). A petition for a writ of mandamus is an appropriate remedy for challenging an interlocutory order. Ex parte Mclnnis, 820 So.2d 795 (Ala.2001); see also Smith v. Jones, 554 So.2d 1066 (Ala.Civ.App.l989)(treating natural parents’ appeal from issuance of an interlocutory order granting the adoption as a petition for a writ of mandamus).
The probate court entered an interlocutory order of adoption on August 1, 2005. On September 8, 2005, the mother filed a motion to set aside the interlocutory order, which the trial court denied. A final hearing was held on the foster parents’ adoption petition, the contest to the adoption, and the great-uncle and great-aunt’s adoption petition on October 11, 2005. The probate court entered a final order of adoption on November 8, 2005, granting the foster parents’ petition. The mother’s mandamus petition seeks to have this Court order the probate court to set aside its interlocutory order and to transfer this adoption case to the juvenile court because, she says, the probate court failed to obtain her consent to the adoption of the child by the foster parents and therefore was without jurisdiction to enter the order. The foster parents argue that the mother has an adequate remedy at law and, therefore, that she is not entitled to mandamus review.
Generally, an “adequate remedy” exists if the petitioner will be able to raise the issue on appeal. See Ex parte Daimler Chrysler Corp., 952 So.2d 1082 (Ala. 2006); Ex parte Jackson, 780 So.2d 681 (Ala.2000); Ex parte Inverness Constr. Co., 775 So.2d 153 (Ala.2000). “ ‘A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal.’ ” Ex parte Flexible Prods. Corp., 915 So.2d 34, 39 (Ala.2005) (quoting Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998)). We agree that a petition for a writ of mandamus cannot be used as a substitute for an appeal. However, the petition for a writ of mandamus in the present case is moot.
Section 26-10A-18 provides:
“Once a petitioner has received the adoptee into his or her home for the purposes of adoption and a petition for adoption has been filed, an interlocutory order of adoption shall be entered delegating to the petitioner (1) custody, except custody shall be retained by the Department of Human Resources or the licensed child placing agency which held custody at the time of the placement until the entry of the final decree and (2) the responsibility for the care, maintenance, and support of the adoptee, including any necessary medical or surgical treatment, pending further order of the court. This interlocutory decree shall not stop the running of the time periods prescribed in Section 26-10A-9.”
(Emphasis added.)
Section 26-10A-18 has two conditions that must be met before the court enters an interlocutory order; the prospective adoptive parents must receive the child *1015 into their home for the purpose of adoption and a petition for adoption must be filed. In the present case, the foster parents did not receive the child into their home for the purpose of adoption; instead, they were the foster parents of the child and initially received the child into their home for the purpose of serving as foster parents. However, the mother did not file a motion with the Court of Civil Appeals for a stay of the interlocutory order. With no stay in place, the probate court had jurisdiction to continue the adoption proceedings. We note that the purpose of an interlocutory order of adoption is to enable the prospective adoptive parents to authorize any necessary medical care for the minor child. See Comment to § 26-10A-18. As foster parents licensed by DHR, the foster parents had authority to authorize medical treatment for the child. See Ala. Admin. Code (Dep’t Human Res.) Reg. 660-5-29-.04 (“Foster parents shall participate in planning to meet the medical and dental needs of child(ren) in custody.”). Furthermore, we note that “[a]s provided for in § 26-10A-24, a proper person at any time before a final decree of adoption is entered may petition the court for a contested hearing. If the contesting party is successful, the court shall dismiss the adoption proceedings.” Comment to § 26-10A-18. Once the final order of adoption is entered, the interlocutory order becomes moot. A moot case lacks justiciability. Accordingly, we dismiss the petition for a writ of mandamus because the interlocutory order of adoption became moot when the final order of adoption was entered.

The Mother’s Appeal (case no. 1061013)

The mother raises three issues on appeal: (1) whether the probate court had jurisdiction to grant the foster parents’ adoption petition when they failed to obtain the consent of either parent and when the probate court failed to transfer the petition to the juvenile court for a termination of the parents’ rights; (2) whether the probate court had jurisdiction to grant the foster parents’ petition for adoption when DHR had not consented to the adoption and there was no finding that DHR had unreasonably withheld its consent to the adoption; and (3) whether there was clear and convincing evidence that the mother abandoned her child, thereby impliedly consenting to the adoption.
“In Alabama, the right of adoption is purely statutory and in derogation of the common law, ... and unless the statute by express provision or necessary implication confers the right of adoption, such right does not exist.” Evans v. Rosser, 280 Ala. 163, 164-65, 190 So.2d 716, 717 (1966) (citing Doby v. Carroll, 274 Ala. 273, 147 So.2d 803 (1962)). Furthermore, “[w]e have always required strict adherence to the statutory requirements in adoption proceedings.” McCoy v. McCoy, 549 So.2d 53, 57 (Ala.1989) (citing Ex parte Sullivan, 407 So.2d 559 (Ala.1981)).
“ ‘The adoption of a child was a proceeding unknown to the common law. The transfer of the natural right of the parents to their children was against its policy and repugnant to its principles. It had its origin in the civil law and exists ... only by virtue of the statute which ... expressly prescribes the conditions under which adoption may be legally effected.
“ ‘Consent lies at the foundation of statutes of adoption, and under our law this consent is made absolutely essential to confer jurisdiction on the ... court to make an order of adoption, unless the conditions ... exist specially provided by the statute itself and which render such consent of the parents unnecessary. Unless such consent is given, or, for the *1016 exceptional causes expressly enumerated is dispensed with, the court has no jurisdiction in the matter.... The power of the court in adoption proceedings to deprive a parent of his child being in derogation of his natural right to it, and being a special power conferred by the statute, such statute must be strictly construed, and in order to warrant the exercise of the special power ... in opposition to the wishes and against the consent of the natural parent, on the ground that conditions prescribed by statute exist which make .that consent unnecessary, the existence of such conditions must be clearly proven ... if the statute is open to construction and interpretation, it should be construed in support of the right of the natural parent.’ ”
McGowen v. Smith, 264 Ala. 303, 305, 87 So.2d 429, 430-31 (1956) (quoting In re Cozza, 163 Cal. 514, 522-24, 126 P. 161, 164^65 (1912)).
On appeal, the mother argues, as she did in her petition for the writ of mandamus, that the probate court erred in granting the foster parents’ petition for an interlocutory order of adoption because the foster parents failed to obtain the consent of either the mother or the father and the probate court failed to transfer the adoption petition to the juvenile court for a termination of the mother’s and father’s parental rights pursuant to § 26-10A-3. However, the transfer provision of § 26-10A-3 does not apply to interlocutory orders. The failure of, or the inability to obtain, the “consent” in § 26-10A-3 means consent generically, i.e., it can involve the absence of written or implied consent. Whether all necessary consents of whatever type are present, though, is to be decided at a later stage of the proceedings, even as late as at the final, dispositional hearing. See § 26-10A-13(c), concerning written consents, which states that “[a]ll consents or relinquishments required by this act shall be filed with the court in which the petition for adoption is pending before the final decree of adoption is entered,” and § 26-10A~24(a)(3), which provides that whether an actual or implied consent is valid shall be determined at a contested hearing, and § 26-10A-25(b)(2), which requires the court, at the disposi-tional hearing, to find on clear and convincing evidence that “[a]ll necessary consents, relinquishments, terminations or waivers have been obtained and, if appropriate, have been filed with the court.” Therefore, whether the proceeding will be transferred to the juvenile court for the limited purpose of terminating parental rights is an issue that typically arises after an interlocutory order has been entered.
The mother also appears to be arguing that the probate court erred in entering the final order of adoption because the foster parents failed to obtain the consent of either the mother or the father and the probate court failed to transfer the adoption petition to the juvenile court pursuant to § 26-10A-3 for a termination of the mother’s and father’s parental rights.
We note that § 26-10A-3 vests the probate courts with original jurisdiction of proceedings brought under the Alabama Adoption Code. Once a petition for adoption is filed in the probate court, however, there are four statutory provisions for a transfer to another court of either the entire proceeding or a specified portion thereof.
First, § 12-12-35, Ala.Code 1975, provides:
“(a) Adoption proceedings, primarily cognizable before the probate court, may be transferred to the district court on motion of a party to the proceeding in probate court.
*1017 “(b) When adoption proceedings are transferred to the district court, a copy of the record of such proceedings shall be filed in the probate court, and the probate court offices shall maintain records of all adoption proceedings within their respective counties.”
This provision, which predates the Alabama Adoption Code but which was not affected by it, allows a party to an adoption proceeding to initiate a transfer, which is discretionary with the probate court (“may be transferred”), and, once a motion for transfer is granted, the entire “adoption proceeding[ ]” is transferred to the district court. See Ex parte C.L.C., 897 So.2d 234 (Ala.2004)(holding that the primary jurisdiction over adoptions is in the probate court and that, unless the juvenile court acquires jurisdiction over a petition to adopt by the transfer mechanism of § 12-12-35, the juvenile court is without authority to grant an adoption).
Second, § 26-10A-21 states:
“If, at any time during the pendency of the adoption proceeding, it is determined that any other custody action concerning the adoptee is pending in the courts of this state or any other state or country, any party to the adoption proceeding, or the court on its own motion, may move to stay such adoption proceeding until a determination has been made by an appropriate court with jurisdiction pursuant to the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA)[5] or the Parental Kidnapping Prevention Act (PKPA). The adoption may be transferred and consolidated with a custody proceeding in any court in this state.”
This statute, which includes a transfer mechanism, provides that, upon motion made by a party or upon the court’s own motion, the probate court may stay an adoption proceeding while a custody action is pending in another court, and, in addition, the probate court may transfer “the adoption” to the other court to be consolidated with the custody proceeding. Thus, this section, like § 12-12-35 quoted above, provides for a discretionary transfer of the entire adoption proceeding.
Third, § 26-10A-24, dealing with hearings on adoption contests only, provides for a limited transfer in subsection (e), which states:
“(e) On motion of either party or of the court, a contested adoption hearing may be transferred to the court having jurisdiction over juvenile matters.”
Like the two transfer provisions above, a transfer under this provision, which may be upon the request of a party or upon motion of the court, is a discretionary transfer by the probate court; however, unlike the other two provisions, this section provides that only the “contested adoption hearing” may be transferred, rather than the entire adoption proceeding. Therefore, after a juvenile court has conducted a “contested adoption hearing” transferred to it pursuant to § 26-10A-24(e) and decided the issues presented in the hearing, the adoption proceeding would be remanded to the probate court for further action.
The last possible transfer procedure in an adoption proceeding is contained in § 26-10A-3, Ala.Code 1975, which states:
“The probate court shall have original jurisdiction over proceedings brought under [this] chapter. If any party whose consent is required fails to consent or is unable to consent, the proceeding will be transferred to the court having jurisdiction over juvenile matters for *1018 the limited purpose of termination of parental rights. The provisions of this chapter shall be applicable to proceedings in the court having jurisdiction over juvenile matters.”
(Emphasis added.) As the emphasized portions of this section provide, if a necessary consent is not present, the proceeding must be transferred to the juvenile court, but only for the limited purpose of determining whether the parental rights of the nonconsenting parent should be terminated.
Sections 26-10A-7 and -10 set out the entities from whom consents or relinquish-ments are either required or not required, before an adoption can be granted. When a consent or relinquishment is required, §§ 26-10A-11 and -12 prescribe the requirements necessary for an express, written consent or relinquishment (and provide a form therefor), while § 26-10A-9 sets out the acts or omissions by which a consent or relinquishment required by § 26-10A-7 may be implied. The contest provision in the Alabama Adoption Code, § 26-10A-24, provides, among other grounds of contest, for the adjudication of the validity of either an express or implied consent.
When the probate court has exercised its discretion to transfer the entire adoption proceeding (by virtue of § 12-12-35 or § 26-10A-21) to either a district or another court, the transferee court acquires jurisdiction, and the probate court thereafter maintains only recordkeeping responsibilities. See § 12-12-35(b) quoted above. When the probate court has exercised its discretion to transfer only that limited portion of the proceeding concerning a contested hearing (by virtue of § 26-10A-24(e)), it is nevertheless then the province of the transferee juvenile court, attendant to the transferred contested hearing, to decide a contested issue of implied consent. Put another way, it is the court that hears and decides the contest that determines “[wjhether an actual or implied consent or relinquishment to the adoption is valid.” § 26-10A-24(a)(8).
Accordingly, in the absence of a transfer of the contest, it is the probate court that hears and determines whether all necessary consents or relinquishments, either express or implied, are present. Where, as here, the probate court did not transfer the contest filed by the great-uncle and great-aunt, the probate court properly proceeded to hear and decide whether the mother and the putative father gave their implied consent pursuant to § 26-10A-9. The probate court found that each parent had given implied consent, and there was then no mother or father who was required to give consent who had not done so, and therefore no basis for the court to transfer the proceeding pursuant to § 26-10A-3 “for the limited purpose of termination of parental rights,” as the mother so requested.
It is only when there is no express or implied consent or relinquishment from a parent of the adoptee that the mandatory transfer portion of § 26-10A-3 applies, so that “the proceeding will be transferred to the court having jurisdiction over juvenile matters for the limited purpose of termination of parental rights.” (Emphasis added.) When applicable, this transfer provision is mandatory, both because of its language and because the probate court cannot grant an adoption petition in the absence of a necessary parental consent or relinquishment, and it is the exclusive jurisdiction of the juvenile court, § 26-18-1 et seq., Ala.Code 1975, to terminate parental rights, which obviates any further need for consent or relinquishment from the affected parent.
In the present case, the great-uncle and great-aunt sought a transfer of the adoption proceeding to the juvenile court for a *1019 termination of parental rights under § 26-10A-3. When the legislature adopted the Alabama Adoption Code in 1990, § 26-10A-3 established the probate court as the court with original jurisdiction over adoptions. When § 26-10A-3 is read in para materia with § 26-10A-9, it is clear that if the probate court finds that the evidence does not prove implied consent or if the biological parent is unable to consent, then the probate court must transfer the case to juvenile court for a determination of whether to terminate parental rights. A fair reading of the Alabama Adoption Code is that the court with original jurisdiction over adoptions should be able to determine whether a parent whose consent is required has, through his or her acts or omissions, impliedly consented to an adoption.
The mother cites Vice v. May, 441 So.2d 942 (Ala.Civ.App.1983), in support of her position that the probate court should have transferred the adoption proceeding to the juvenile court for a termination of parental rights and that because the probate court failed to transfer the case for a termination of parental rights, the probate court’s order is void. In Vice v. May, the Court of Civil Appeals held that under § 26-10-3, the precursor statute to § 26-10A-3, the consent of the parents, or in circumstances falling under § 26-10-3, the consent of the guardian or the Department of Pensions and Security, is jurisdictional, so that if the required consent is missing, the court never obtains jurisdiction to proceed to the paramount question of the child’s welfare.[6] As noted, § 26-10-3 was superseded in 1990 by § 26-10A-3 when the Alabama Adoption Code was enacted, and, under § 26-10A-3, a probate court’s order of adoption is void when the probate court did not obtain the consents of parents as required and the juvenile court had not entered an order terminating the parent’s parental rights. However, consent to an adoption can be either express and written or implied from the conduct of a parent. Furthermore, the mother’s reliance on Vice is misplaced because the probate court in that case found that the mother had impliedly consented to the adoption. That is, the probate court could first determine whether there was sufficient evidence regarding implied consent and then proceed.
The mother argues that the probate court did not have jurisdiction to grant the foster parents’ petition for adoption because DHR had not consented to the adoption of the child by the foster parents and there was no finding that DHR had unreasonably withheld its consent to the adoption as set out in § 26-10A-7(a)(4). Section 26-10A-7(a)(4) requires the consent of “[t]he agency to which the adoptee has been relinquished or which holds permanent custody and which has placed the adoptee for adoption, except that the court may grant the adoption without the consent of the agency if the adoption is in the best interest of the adoptee and there is a finding that the agency has unreasonably withheld its consent .... ” (Emphasis added.) Section 26-10A-2 defines “relinquishment” as “[gjiving up the physical custody of a minor for purpose of placement for adoption to a licenséd child placing agency or the Department of Human Resources.”
*1020 In the present ease, DHR had temporary, not permanent, custody of the child. Also, the child was not “relinquished” to DHR as that term is defined in the Alabama Adoption Code; the mother did not give up physical custody of the child for the purpose of placing the child with DHR for adoption. Instead, DHR obtained temporary custody of the child after a child-abuse-and-neglect report had been filed. It does not appear that DHR’s consent to the adoption under § 26-10A-7(a)(4) was necessary. Adoptions are purely statutory creatures and strict adherence to the statutes is required. Although it would seem logical to require the consent of the agency that had either temporary or permanent custody of a child before an adoption could proceed, we leave it to the legislature to remedy any defect in that regard.
Last, the mother contends that the foster parents failed to present clear and convincing evidence indicating that she had abandoned the child and thus given her consent to the adoption. Section 26-10A-9 sets out instances in which a parent’s consent to an adoption may by implied by his or her acts or omissions with respect to the child’s care. Those instances include “[k]nowingly leaving the adop-tee with others without provision for support and without communication, or not otherwise maintaining a significant parental relationship with the adoptee for a period of six months.”
The mother left a drug-treatment facility with the child in 2000 without the permission of the court that had ordered her to undergo treatment at the facility. She left the child with an unrelated individual in 2000. The mother has not provided any financial support for the child during its life. It does not appear that she has had any physical contact with the child since 2000. The mother made no attempts to have physical contact with child while she was incarcerated. The prison ministry where the mother was incarcerated has sent the child and the child’s siblings gifts from the mother. The mother wrote the child several letters while she was incarcerated and there was evidence indicating that the mother had recently telephoned the child when the child was visiting with relatives.
The mother states in her brief to this Court that it was undisputed that she has been in jail or prison for all but a few days of the time that the child has been in DHR’s custody. However, the record is disputed as to how much time the mother has actually been incarcerated during the child’s life. The record indicates that the mother was released from an out-of-state prison in the summer of 2004 but did not contact DHR regarding her release or her location, nor did the mother request a visit with the child following her release. Subsequently, the mother violated her parole and was arrested again. We agree with the mother that incarceration alone is not a ground for finding that a parent has abandoned a child. See Gillespie v. Bailey, 397 So.2d 130 (Ala.Civ.App.1980) (incarceration per se does not constitute abandonment of a prisoner’s child, but it is a factor to be considered along with other factors indicating abandonment in determining whether the prisoner has impliedly consented to the adoption). However, maintaining a significant parental relationship with a child entails more than a mere sporadic showing of interest or concern. Here, there was clear and convincing evidence indicating that the mother has failed to provide for the child and that she has not maintained a significant relationship with the child.

The Great-Uncle and Great-Aunt’s Appeal (case no. 1061170)

The great-uncle and great-aunt argue that the probate court erred in fail *1021 ing to enforce the agreement the foster parents had entered into with DHR in which the foster parents agreed that they would not seek to adopt the child without DHR’s permission. They also argue that the probate court erred in granting the foster parents’ adoption petition when there was a relative resource available because the legislature, in § 12-15-1.1, Ala. Code 1975, mandates that the family unit be preserved. The great-uncle and great-aunt also argue that the probate court erred in not staying the petition for adoption pursuant to § 26-10A-21, because, they say, the child was under the continued supervision of the juvenile court.
The great-uncle and great-aunt argue that the probate court should have honored the agreement the foster parents signed with DHR. In that agreement, the foster parents agreed that they would obtain DHR’s permission before they sought to adopt the child. The foster parents contend that only DHR has standing to advance that argument. We agree.
In K.P. v. G.C., 870 So.2d 751 (Ala.Civ.App.2003), two sets of foster parents sought to adopt the same child. The second set of foster parents argued that the probate court erred in finding that DHR had improperly withheld its consent to the first set out foster parents.
“To be a proper party, ‘a person must have an interest in the right to be protected.’ Eagerton v. Williams, 433 So.2d 436, 447 (Ala.1983). Also, ‘[a]s a general rule, “a litigant may not claim standing to assert the rights of a third party.” ’ Ex parte Izundu, 568 So.2d 771, 772 (Ala.1990) (quoting Jersey Shore Med. Ctr.-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 144, 417 A.2d 1003, 1006 (1980)).... [T]he finding that DHR unreasonably withheld its consent to the adoption of the children by [the first set of foster parents] does not create in [the second set of foster parents] a right that they have an interest in protecting such as would entitle them to advance an argument on behalf of DHR.”
870 So.2d at 755-56. In the present case, the great-uncle and great-aunt were not parties to the foster parents’ agreement with DHR. The foster-parent relationship is a state-created relationship that is maintained by DHR. DHR is the proper party to decide how best to protect its interest in its foster-care agreement with the foster parents.
The great-uncle and great-aunt also argue that the probate court erred in granting the foster parents’ adoption petition when there was an available relative resource because the legislature mandates that the family unit be preserved in § 12-15-1.1. Section 12-15-1.1 applies in juvenile courts and to those “who come within the jurisdiction of the juvenile court.” Subsections (1) and (8) of § 12-15-1.1 provide that the goal of the juvenile court is to preserve and strengthen the child’s family whenever possible and to maintain a preference at all times for preserving the family unit.
In the present case, the child was currently before the probate court on a petition for adoption. Although § 12-15-1.1 sets out the purposes of the juvenile court, § 12-15-30 establishes the jurisdiction of the juvenile court and recognizes that adoption proceedings are outside the jurisdiction of the juvenile court unless transferred there. See § 12 — 15—30(b)(5). Unlike the probate court, the juvenile court has exclusive original jurisdiction over proceedings in which a child is alleged to be delinquent, dependent, or in need of supervision. As discussed earlier in this opinion, there are certain situations in which the probate court may transfer part or all of an adoption proceeding to the juvenile *1022 court. This transfer may be to terminate parental rights, to hear a contested hearing, or to decide the adoption in its entirety. The interplay between the probate court and the juvenile court in adoption proceedings does not mean that the probate court must follow the strict mandates of the juvenile court. Furthermore, although one of the goals of juvenile court is to preserve the family unit and to maintain a preference at all times for preserving the family unit, the juvenile court does have the authority to terminate parental rights when necessary.
The great-uncle and great-aunt also argue that the probate court erred in not staying the petition for adoption when the child was under the continued supervision of the juvenile court.
Section 26-10A-21 provides:
“If, at any time during the pendency of the adoption proceeding, it is determined that any other custody action concerning the adoptee is pending in the courts of this state or any other state or country, any party to the adoption proceeding, or the court on its own motion, may move to stay such adoption proceeding until a determination has been made by an appropriate court with jurisdiction pursuant to the provisions of the Uniform Child Custody Act (UCCJA) [7] or the Parental Kidnapping Prevention Act (PKPA). The adoption may be transferred and consolidated with a custody proceeding pending in any court in this state.”
The great-uncle and great-aunt filed a motion in the probate court on September 16, 2005, to stay the adoption proceedings, arguing that the child was the subject of related proceedings in the juvenile court and that the probate court should therefore stay any further proceedings. In R.C.O. v. J.R.V., 759 So.2d 559 (Ala.Civ. App.1999), the biological father appealed from the probate court’s order denying the father’s motion to dismiss and his motion to stay the proceedings and granting the prospective adoptive parents’ petition to adopt the child. The child was born out-of-wedlock, and the mother had placed the child with a private adoption agency. The agency had then placed the child with the prospective adoptive parents. The adoption agency filed a complaint and petition in the juvenile court stating that the biological mother was unable to properly care for the child, that the father had shown no interest in the child, and that it would be in the best interest of the child to proceed with the adoption. The father was served with forms entitled “Relinquishment of Minor for Adoption” and “Notification of Right to Counsel” in Florida where he resided. Acting pro se, the father filed a statement in the juvenile court, stating that he refused to relinquish the child for adoption and that he wanted custody of the child. The juvenile court issued an order requiring a paternity test. The adoption agency later moved to dismiss its complaint because the mother had withdrawn her consent to the adoption. The juvenile court granted the motion to dismiss. The father appealed, seeking review of his claim for custody. While the appeal was pending, the prospective adoptive parents filed a petition to adopt in the probate court. The father filed a motion to dismiss the petition pursuant to § 26-10A-21. The Court of Civil Appeals held that the probate court should have stayed the adoption proceeding because the father’s claim for custody was still pending in the juvenile court.
While R.C.O. would appear to support the great-uncle and great-aunt’s argument, *1023 § 26-10A-21 has since been amended, and R.C.O. addressed the earlier version of § 26-10A-21. When § 26-10A-21 was amended, the phrase “shall move to stay such adoption proceeding” was changed to read “may move to stay such adoption proceeding.” The amended version makes seeking the stay discretionary. Also, during the amending process what is now the last sentence was added to § 26-10A-21: “The adoption may be transferred and consolidated with a custody proceeding pending in any court in this state.” The amended version makes the transfer and consolidation of the adoption with a pending custody proceeding discretionary. In accordance with the current version of § 26-10A-21, making transfer of the adoption proceeding and consolidation with any custody proceeding discretionary, we cannot say that the probate court exceeded its discretion in refusing to grant the stay under the facts of this case.

Conclusion

The mother’s petition for a writ of mandamus has been rendered moot. Therefore, we dismiss the petition. The probate court’s order of adoption challenged in both the mother’s appeal and the great-uncle and great-aunt’s appeal is due to be affirmed. In this case, the child was fortunate to have foster parents and a great-uncle and great-aunt, all of whom love this child and want to provide this child with a safe, and stable home life. However, only one set of parents may adopt the child. The judgment of the probate court granting the adoption petition of the foster parents and denying the great-uncle and great-aunt’s contest and petition for adoption, based on ore tenus evidence and therefore presumed correct, Ex parte J.W.B., 933 So.2d 1081 (Ala.2005), is affirmed.
1061010 — DISMISSED.
1061013 — AFFIRMED.
1061170 — AFFIRMED.
LYONS, WOODALL, and PARKER, JJ., concur.
COBB, C.J., and SEE, STUART, and SMITH, JJ., concur specially.

. Nothing in the Alabama Adoption Code requires a hearing before the entry of an interlocutory order of adoption. However, there is nothing to prohibit such a hearing. All that is required before an interlocutory order is entered is that the mandates of § 26-10A-18, Ala.Code 1975, are met.

. Section 26-10A-7(a)(5) provides that the putative father's consent is needed if the putative father has registered with the Putative Father Registry and responds within 30 days to the notice he receives under § 26-10A-17(a)(10). Nothing in the record indicates that the putative father registered with the Putative Father Registry. Nevertheless, service was attempted on the father by certified mail, but the mail was returned as unclaimed. Notice was then served by publication in the local newspaper for four successive weeks as provided for in §§ 26-10A-17(a)(10) and 26-10A — 17(c)(1), Ala.Code 1975.

. The guardian ad litem questioned whether the great-uncle and great-aunt's appeal was timely. Section 26-10A-26, Ala.Code 1975, a part of the Alabama Adoption Code, provides that an appeal shall be filed within 14 days of the final order of adoption. Section 26-10A-37 provides that the Alabama Rules of Civil Procedure apply to the probate court in adoption proceedings to the extent that they apply under § 12-13-12, Ala.Code 1975. Section 12-13-12 provides that in the absence of express provisions to the contrary, provisions of the Code relating to pleading, practice, evidence, and judgments and orders in the circuit court shall apply in the probate court. The great-uncle and great-aunt timely filed a postjudgment motion. That motion was denied by operation of law. The notice of appeal was thus timely filed under the Alabama Rules of Civil Procedure. The Court of Civil Appeals has addressed the merits in appeals in adoption cases from the probate court where a party has filed a postjudgment motion. See In re J.C.P., 871 So.2d 831 (Ala.Civ. App.2002) (the putative father filed a post-judgment motion, which was denied by operation of law, and the father subsequently appealed the final order of adoption); J.B. v. F.B., 929 So.2d 1023 (Ala.Civ.App.2005) (following the denial of his postjudgment motion, the father appealed from the judgment of the probate court granting the adoption petition).

. Section 12-3-15 provides that “[wjhen it is deemed advisable or necessary for the proper dispatch of the business of the Alabama Court of Civil Appeals, the Chief Justice of the Supreme Court, with the advice of the Supreme Court, and the presiding judge of the Court of Civil Appeals, may in writing designate any case in the Alabama Court of Civil Appeals to be transferred to the Supreme Court for a hearing and final determination by that court.” No reason was stated for the transfer of this case to this Court. The Supreme Court clerk’s office assigned these cases to Justice Bolin on November 29, 2007.

. The UCCJA has been repealed and replaced by the Uniform Child Custody Jurisdiction and Enforcement Act (“UCCJEA”). See § 30-3B-101 et seq., Ala.Code 1975.

. When Vice was decided, § 26-10-3 provided: " 'No adoption of a minor child shall be permitted without the consent of his parents, but the consent of a parent who has abandoned the child, or who cannot be found, who is insane or otherwise incapacitated from giving such consent, or who has lost guardianship of the child, through divorce proceedings, or by the order of a juvenile court or court of like jurisdiction, may be dispensed with, and consent may be given by the guardian if there is one, or if there is no guardian, by the state department of pensions and security.’ " Vice, 441 So.2d at 943.

. See note 5, supra.