192 So. 417

**LEATH, County License Inspector, et al. v. WILSON.**

**7 Div. 593.**

Supreme Court of Alabama.

Dec. 7, 1939.

———◆———

Julius S. Swann, of Gadsden, for appellee.

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for appellants.

PER CURIAM.

According to the agreed statement of facts, appellee is, and has been for several years, engaged in the business of lending money on salaries and making industrial or personal loans in the counties of Jefferson and Etowah. For the privilege of doing said business in Jefferson County for the tax year 1938–1939, the appellee paid to the Probate Judge of Jefferson County the sum of $150.50 for State and County license, as required by section 348, schedule 93½ (2) and section 350 of the Revenue Law, General Acts 1935, pages 476, 477, 557.

Appellee maintained an additional place of business in Gadsden, Etowah County, where he is engaged in the business of lending money on salaries and making industrial and personal loans. For the privilege of doing said business in Etowah County for the tax year 1938–1939, appellee paid to the Probate Judge of Etowah County the sum of $75.50 for State and County license, just one-half of the license paid in Jefferson County.

The question to be determined is whether the license to be paid in Etowah County should be the same as the sum paid in Jefferson County, or only one-half of same as found by the trial court.

The agreed facts place this appellee under the influence of paragraph 2 of schedule 93½, which deals with lending money on salaries and making industrial or personal loans. That schedule contains three features:

1. Prescribes a State license for persons engaged in discounting or buying conditional sales contracts and other specified forms of securities. It then provides that its payment shall be sufficient to engage in such business in any county in the State except the county in which his principal office is located, in which county he shall pay a county license of one-half the above schedule. (The above schedule referred to a graduated scale dependent upon the amount of capital employed.)

2. This prescribes a State license charge for each person engaged in the business of lending money on salaries or making industrial or personal loans. The amount is fixed at $100 for each county in which he shall engage in such business.

3. This prescribes a State license charge for each person lending money on mortgages secured by real estate. The amount of the charge is based on the amount of such loans, and contains a graduated list of sums dependent upon the amount of such loans.

This is followed by the clause "This Schedule shall apply to all such persons whether organized under the laws of this State or any other State or territory or county, the payment of the license in one county of the State as evidenced by the license certificate of the Judge of Probate shall be sufficient; provided however that if an office is maintained in more than one county, the license shall be one-half of the above license payable in each additional county where an office is maintained."

The particular question here is whether the last feature above quoted has reference to the amount of the State license for one engaged in lending money in several counties on salaries and others mentioned in subdivision 2, above referred to. It fixes a different amount for such money lenders than that previously provided in subdivision 2.

The two provisions are in conflict, if that last above quoted applies to subdivision 2, supra, unless there is a distinction intended when the money lender does business in the several counties without maintaining an office in them. We do not

think the legislature intended to fix a less amount when he maintains an office in such counties, than when he does business in them without maintaining such office. Certainly if he maintains an office there in transacting his business as in one feature of the Act he is none the less engaged in business there as in the other feature. So that we think the two features cannot both apply to fix the license when the lender does business in several counties.

In one feature it is fixed at $100 for each county in which he does business, in the other it would be at one-half such amount in all but one county. In either aspect there is of course to be added an amount for the county license equal to one-half of the State license fee. Sec. 350 (b) of the General Revenue Act of 1935, page 558.

So that we are remitted to the question of whether the legislature intended to enact a feature of schedule 93½ of section 348, page 476, supra, in conflict with another feature of the same Act.

█ The rule for interpreting an act of the legislature in this respect makes it the duty of the Court to harmonize and reconcile all parts of a statute so that effect may be given to each and every part: conflicting intentions in the same statute are never to be supposed or so regarded unless forced on the Court by unambiguous language. 59 Corpus Juris 999; Fidelity & Deposit Co. v. Farmers' Hardware Co., 223 Ala. 477, 136 So. 824; Blumberg Shoe Co. v. Phœnix Assur. Co., 203 Ala. 551, 84 So. 763.

It is thought that the above quoted feature refers to all three subdivisions in schedule 93½, supra, because it is made to apply to "this schedule," which contains them all. But we do not think that such reference is so applicable without other reasonable interpretation and without ambiguity.

True, the entire paragraph is designated as "Schedule 93½". But it is apparent that "schedule," as used in that paragraph does not always refer to it all. In subdivision 1 of it, in which the amount is fixed on a difference in population, and in which alone of the three is a county license mentioned, it is fixed at one-half of the above schedule, payable only in the county in which the principal office is located. The schedule refers to the difference in amount due to the difference in the population.

Subdivision 2 has no such graduated amounts specified.

Subdivision 3 has a schedule of the amounts of State license each dependent upon the amount of loans. This is followed immediately by the clause here in question, beginning with the words "this schedule." That clause is entirely out of systematic connection with both subdivisions 1 and 2, but is in harmony only with number 3. "This schedule" is used again in the next sentence, as having no application to the corporations organized under the Federal Home Owners' Loan Act, 12 U. S.C.A. § 1461 et seq. The next two sentences make it clear that "this schedule" shall not apply to charitable, religious, or other such institutions, nor to banking institutions, nor to individuals who are residents of this State lending their own money on real estate security or to persons acting in a representative capacity, lending the money of his beneficiary on real estate security.

It is apparent that the thought underlying all those provisions is that those persons are exempt from the operation of subdivision 3 relating to loans on real estate security. But they are all declared to be exempt from "this schedule."

█ All of this shows that all the provisions of the paragraph designated "Schedule 93½" may be very well harmonized and reconciled so as to give effect to each and every part without any of them conflicting with others. So we think the meaning is clear that 93½ (1) and 93½ (2) are both complete with the one sentence in which each is respectively expressed, and that 93½ (3) is affected by all the balance of the paragraph which follows it.

We therefore find ourselves out of harmony with the decree of the chancery court making declaration as to the meaning and effect of schedule 93½, supra, insofar as it affects the business of appellee, complainant below.

To that extent the decree of that court is reversed and one here entered declaring that on the facts here shown appellee is liable to pay the State license fee of $100 and county license fee of $50 under schedule 93½ (2) on account of the transaction of his business in Etowah County, as heretofore stated.

Reversed and rendered.

ANDERSON, C. J., and GARDNER, BOULDIN, and FOSTER, JJ., concur.