PER CURIAM.
The opinion of November 7, 2014, is withdrawn, and the following is substituted therefor.
W.L.K. (“the father”) and S.F. (“the mother”) were involved in a relationship between April and July 2012; they lived together in the father’s house in Middle-burg, Florida, during that period. The mother became pregnant early in the relationship, and she and the father had begun preparing for the baby by purchasing baby items. However, the mother left the father in July 2012, and, after she broke into the father’s house and stole several items, the father swore out a warrant against her. The mother was arrested, and, after that, the father lost contact with her. In December 2012, the father, who is in the United States Navy, contacted an attorney in the Judge Advocate General about his situation; that attorney referred the father to a nonmilitary attorney, who assisted the father by instituting a paternity and custody action in a Florida court in January 2013. The father registered with the putative father registry in Florida. The father attempted to locate the mother at nearby hospitals on January 18, 2013, the *655 expected date of delivery. However, the father was unable to locate the mother.
On January 9, 2013, the mother gave birth to M.M. (“the child”) in Montgomery, Alabama. The mother had consented to an adoption of the child by T.C.M. and C.N.M. (“the prospective adoptive parents”), who were present at the birth and who took the child home from the hospital. On January 29, 2013, the prospective adoptive parents filed a petition to adopt the child in the Jefferson Probate Court.
The father first learned of the birth of the child in Alabama on March 1, 2013. After he was served with an amended petition to adopt the child on March 25, 2013, and upon the advice of his Florida counsel, the father sought legal counsel in Alabama. He filed a contest to the adoption petition and a motion to dismiss the adoption petition on April 11, 2013.
As required by Ala.Code 1975, § 26-10A-24(a), the probate court held a contested hearing on the father’s contest to the adoption petition on September 26, 2013. At issue was whether the father had impliedly consented to the child’s adoption pursuant to the theory of “pre-birth abandonment,” under which consent, to an adoption may be implied based on abandonment if a father fails, “with reasonable knowledge of the pregnancy, to offer financial and/or emotional support for a period of six months prior to the birth.” Ala.Code 1975, § 26-10A-9(a)(l). After hearing the testimony of the father and T.C.M., the probate court entered an order on March 19, 2014, concluding that the father had not impliedly consented to the adoption and specifically rejecting the contention that the father’s conduct had amounted to an abandonment of the mother during her pregnancy. The order set a hearing for June 12, 2014, “to determine the best interest of [the] child.”
On April 1, 2014, the prospective adoptive parents filed a motion, purportedly pursuant to Rule 59, Ala. R. Civ. P., seeking to have the probate court amend its judgment. The father filed a motion seeking to have the probate court dismiss the adoption proceeding as required by § 26-10A-24(d). The probate court purported to deny both motions on July 22, 2014. Also on July 22, 2014, the probate court entered an order stating that, on its own motion, it was transferring the adoption proceeding to the Jefferson Juvenile Court pursuant to § 26-10A-24(e).
The father filed this petition for the writ of mandamus with this court on August 4, 2014, seeking an order prohibiting the transfer of the adoption proceeding to the juvenile court, an order requiring the probate court to dismiss the adoption proceeding, as required by § 26-10A-24(d), and an order requiring the probate court to vacate its interlocutory order awarding temporary custody of the child to the prospective adoptive parents.
“ ‘ “Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” ’ ”
Ex parte A.M.P., 997 So.2d 1008, 1014 (Ala.2008) (quoting Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003), quoting in turn Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995)).
To determine whether the father’s mandamus petition is the proper vehicle by which to invoke this court’s review, we must first consider whether the probate court’s March 19, 2014, order was a final judgment or an interlocutory order. Ex parte A.M.P., 997 So.2d at 1014 (“A *656 petition for a writ of mandamus is an appropriate remedy for challenging an interlocutory order,”). The parties indicate in their respective filings that the March 19, 2014, order was an interlocutory order because it did not dismiss the adoption petition, determine who should have custody of the child, or enter a judgment of adoption. “A final judgment is one that completely adjudicates all matters in controversy between all the parties.” Eubanks v. McCollum, 828 So.2d 935, 937 (Ala.Civ.App.2002). The March 19, 2014, order decided the father’s contest to the adoption, but it did not resolve the entire adoption proceeding. In addition, this court has explained that an order denying a petition to set aside consent to an adoption is not a final judgment capable of supporting an appeal. Fowler v. Merkle, 564 So.2d 960, 961 (Ala.Civ.App.1989). Thus, we agree that the March 19, 2014, order was, in fact, an interlocutory order.
That being determined, wé note that the father did not seek mandamus relief within 14 days of the entry of the March 19, 2014, order. According to Rule 21(a)(3), Ala. R.App. P., “[t]he presumptively reasonable time for filing'a petition seeking review of an order of a trial court ... shall be the same as the time for taking an appeal.” ’ A judgment of adoption must" be' appealed within 14 days. Ala.Code 1975, § 26-10A-26(a). Instead of filing a petition for the writ of mandamus,' the father filed a motion seeking to ■have' the probate court enter an order dismissing the adoption proceeding in April, and he waited until the probate court entered an order purporting to deny that motion in July.[1] To the extent that the father’s motion was an attempt to have the probate court reconsider its March 19, 2014, order, we note that, “ ‘unlike a post-judgment motion following a final judgment, a motion to reconsider an interlocutory order does not toll the presumptively reasonable time period that a party has to petition an appellate court for a writ of mandamus.’ ” Ex parte C.J.A., 12 So.3d 1214, 1216 (Ala.Civ.App.2009) (quoting Ex parte Onyx Waste Servs. of Florida, 979 So.2d 833, 834 (Ala.Civ.App.2007)). Although the father’s petition was not timely filed in connection with the March 19, 2014, order, the father’s petition was timely filed in connection with the probate court’s July 22, 2014, order transferring the adoption proceeding to the juvenile court. Thus, we will consider the petition to have timely invoked this court’s jurisdiction.
The father contends that, pursuant to § 26-10A-24(d), the probate court was required to dismiss the adoption proceeding once it resolved the adoption contest in the father’s favor and that it lacked jurisdiction to transfer the proceeding to the juvenile court. Indeed, the language of the statute supports that conclusion:
“(d) After hearing evidence at a contested hearing, the, court shall dismiss the adoption proceeding if the court finds:
“(1) That the adoption is not in the best interests of the adoptee.
*657 “(2) That a petitioner is not capable of adopting the adoptee.
“(B) That a necessary consent cannot be obtained or is invalid.
“(4) That a necessary consent may be withdrawn. Otherwise the court shall deny the motion of the contesting party.”
§ 26-10A-24(d) (emphasis added).
The probate court relied on § 26-10A-24(e) for its transfer order. That provision provides that, “[o]n motion of either party or of the court, a contested adoption hearing may be transferred to the court having jurisdiction over juvenile matters.” § 26-10A-24(e). The probate court, however, had already held the contested hearing when it entered its July 22, 2014, orderj and transfer was therefore not proper under § 26-10A-24(e).
However, as the prospective adoptive parents point out, another statute provides a potential basis for the probate court’s July 22, 2014, order transferring the adoption proceeding to the juvenile court. Section 26-10A-3, Ala.Code 1975, grants the probate court original jurisdiction over adoption proceedings, but it further states that, “[i]f any party whose consent is required fails to consent or is unable to consent, the proceeding will be transferred to the court having jurisdiction over juvenile matters for the limited purpose of: termination of parental rights.” Thus, the prospective adoptive parents contend, under § 26-10A-3 the probate court properly transferred the adoption proceeding to the juvenile court for that court to consider the termination of parental rights.
At first blush, it appears that § 26-10A-24(d) and § 26-10A-3 conflict. One statute, § 26- 10A-24(d), directs the probate court to dismiss the adoption proceeding if, after a contested hearing, it concludes that, among other things, “consent cannot be obtained or is invalid.” The other statute, '§ 26-10A-3, indicates that, when a parent “fails to consent or is unable to consent,” the proceeding should be transferred to the juvenile court for the limited purpose of considering termination of parental rights.
We are aware that this court and our supreme court have indicated that the transfer language contained in § 26-10A-3 mandates transfer to the juvenile court of adoption proceedings lacking implied or express consent from a parent. Ex parte A.M.P., 997 So.2d at 1018 (“It is only when there is no express or implied consent or relinquishment from a parent of the adop-tee that the mandatory transfer portion of § 26-10A-3 applies.... When applicable, this transfer provision is mandatory....”); R.L. v. J.E.R., 69 So.3d 898, 901 (Ala.Civ. App.2011) (“The mother refused to consent to the adoption;, therefore, pursuant to § 26-10A-3, the probate court was required to transfer the matter to the court having jurisdiction to determine whether the mother’s parental rights were due to be terminated.”). In Ex parte A.M.P., our supreme court further opined that, “[w]hen § 26-10A-3 is read in para materia with § 26-10A-9, it is clear that if the probate court finds that the evidence does not prove implied consent ..., then the probate court must transfer the case to juvenile court for a determination of whether to terminate parental rights.” Ex parte A.M.P., 997 So.2d at 1019. However, our supreme court did not consider the language of § 26-10A-24(d) in its analysis in Ex parte' A.M.P., and neither Ex parte A.M.P. nor R.L. involved the resolution of an adoption contest in favor of the objecting parent under § 26-10A-24(d). Thus, we are ■ presented with a question that cannot be answered by reliance on those cases.
To resolve this conflict, we turn to the rules of statutory construction.
*658 “This court must consider statutory provisions in the context of the entire statutory scheme, rather than in isolation. Siegelman v. Alabama Ass’n of School Bds., 819 So.2d 568, 582 (Ala.2001). In ascertaining legislative intent, we must look to the entire act instead of isolated phrases or clauses. Lambert v. Wilcox County Comm’n, 623 So.2d 727, 729 (Ala.1993). Moreover, it is ‘the duty of the Court to harmonize and reconcile all parts of a statute so that effect may be given to each and every part: conflicting intentions in the same statute are never to be supposed or so regarded unless forced on the Court by unambiguous language.’ Leath v. Wilson, 238 Ala. 577, 579, 192 So. 417, 419 (1939). When construing the language of a statute, this court must presume ““that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.’ ” ’ Ex parte Uniroyal Tire Co., 779 So.2d 227, 236 (Ala.2000) (quoting Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997)).”
Hays v. Hays, 946 So.2d 867, 877 (Ala.Civ.App.2006); see also Dollar v. City of Ashford, 677 So.2d 769, 770 (Ala.Civ.App.1995) (quoting Ex parte Jones Mfg. Co., 589 So.2d 208, 211 (Ala.1991)) (stating that “‘[statutes should be construed together so as to harmonize the provisions as far as practical’ ”). “Furthermore, we must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says.” Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 517 (Ala.2003) (citing Ex parte Shelby Cnty. Health Care Auth., 850 So.2d 332 (Ala.2002)).
Our consideration of the entire Alabama Adoption Code, Ala.Code 1975, § 26-10A-1 et seq., given the principles of statutory construction, convinces us that § 26-10A-3 and § 26-10A-24(d) each have specific fields of operation. In a situation in which a probate court has resolved a contest in favor of the parent objecting to the adoption, the plain language of § 26-10A-24(d) must control.[2] That statute addresses a specific form of hearing held in an adoption proceeding, at which a contest to an adoption — including a contest based on an argument that an express or an allegedly implied consent is invalid — is determined. See § 26-10A-24(a)(3) (stating that one issue a probate court may determine at a contested hearing is “[wjhether an actual or implied consent or relinquishment to the adoption is valid”). Moreover, although, according to the prospective adoptive parents, § 26-10A-3 appears to require the transfer of an adoption proceeding in every situation where a parent has failed to give his or her consent, enforcing the transfer provision contained in § 26-10A-3 after a parent has successfully contested the adoption would leave no field of operation for the requirement in § 26-10A-24(d) that the adoption proceeding be dismissed after a successful contest. Enforcing § 26-10A-24(d) and requiring dismissal of an adoption proceeding after a successful contest, however, leaves room for the operation of § 26-10A-3 in those adoption proceedings in which a parent does not mount a contest to the adoption but fails to consent or is unable to do so. Such a construction of the two provisions is supported by the *659 language used in the statutes, and it also meets our duty “ ‘to harmonize and reconcile all parts of a statute so that effect may be given to each and every part.’ ” Hays, 946 So.2d at 877 (quoting Leath v. Wilson, 238 Ala. 577, 579, 192 So. 417, 419 (1939)).
Because we have concluded that the juvenile court’s July 22, 2014, order transferring the adoption proceeding to the juvenile court is not proper under either § 26-10A-24(e) or § 26-10A-3, we grant the petition for the writ of mandamus and order the probate court to rescind its July 22, 2014, order transferring .the adoption proceeding to the juvenile court and to comply with § 26-10A-24(d) and § 26-10A-24(h).[3]
 The father also requests that this court order the probate court to vacate its interlocutory order awarding temporary custody of the child to the prospective adoptive parents. The father maintains that, because he never consented to the adoption of the child, the probate court never acquired jurisdiction to enter the interlocutory custody order, thus rendering that order void. Although a probate court “never obtains jurisdiction to grant [an] adoption” if the required consents are not given or implied, see J.L.F. v. B.E.F., 571 So.2d 1135, 1136 (Ala.Civ.App.1990), this court has likened an adoption proceeding to an in rem proceeding, and, .as such, its jurisdiction is first invoked by allegations in the petition that the required consents have been given or are implied. See Davis v. Turner, 337 So.2d 355, 361 (Ala.Civ.App.1976).
“One line of cases holds that consent must continue up until the rendition of the decree or the trial court loses jurisdiction, In re Adoption of Schult, 14 N.J.Super; 587, 82 A2d 491 [(1951)]; In re Adoption of Susko, 363 Pa. 78, 69 A.2d 132 [ (1949) ]; In re Adoption of McKinzie, 275 S.W.2d 365, Mo.App. [(1955)] The other line of decisions holds that jurisdiction attaches with the initial manifestation of consent and remains in spite of attempted repudiation of consent, Walter v. August, 186 Cal.App.2d 395,8 Cal.Rptr. 778 (1960). This latter line of cases likens adoption to an in rem proceeding, analogous to divorce. The natural parent’s initial consent followed by placement of the child with the adoptive parents creates a res, a pre-adoptive relationship, over which the trial court maintains jurisdiction until adoption is finally decreed or denied. Since it is this res, not the consent agreement per se, which furnishes jurisdiction, repudiation of consent does not withdraw jurisdiction. By keeping jurisdiction, the trial court is fully able to inquire into the best interests of the child.
“In light of the' unique features of Alabama’s adoption statute, the in rem approach to jurisdiction is more appropriate. Jurisdiction attaches with the initial acknowledgement of consent by the natural parent, and, once the child is placed, remains despite attempts at revocation, so long as the child’s welfare is thereby furthered.”
Davis, 337 So.2d at 361.
Thus, when the issue of consent is challenged, such as when a parent attempts . to withdraw consent or when a parent contests an implied consent, the probate court does not automatically lose jurisdiction over the proceeding. Instead, it is called upon to determine that issue, *660 because the preadoptive relationship has created a res to which jurisdiction has attached. Id. Furthermore, the Adoption Code provides that the probate court “may enter further orders concerning the custody of the adoptee pending appeal,” Ala. Code 1975, § 26-10A-26(b), indicating that the probate court’s jurisdiction over an adoptee’s custody is not terminated by the entry of a final order in that court.
At present, the probate court has not concluded its proceedings in this matter. Once it complies with this court’s directive and enters a final judgment in this case, the prospective adoptive parents will likely appeal, as they have attempted an appeal from the interlocutory order under review. The probate court may, pursuant to § 26-10A-26(b), enter an order respecting the custody of the child at that time. Accordingly, we deny the father’s petition insofar as he requests that the probate court be ordered to set aside the interlocutory custody order.
APPLICATION GRANTED; OPINION OF NOVEMBER 7, 2014, WITHDRAWN; PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, with writing.
THOMPSON, P.J., concurs in the result in part and dissents in part, with writing, which DONALDSON, J., joins.

. We note that our supreme court has indicated that a postjudgment motion directed to a judgment of adoption is timely when filed within 14 days of the entry of the judgment and that such a postjudgm^nt motion is denied by operation of law if not ruled upon within 14 days. . See Ex parte A.M.P., 997 So.2d at 1013 n. 3 and accompanying text (explaining that the adoption judgment was entered on November 8, 2005, that the post-judgment motion was "timely filed” on November 22, 2005, that the postjudgment motion was denied by operation of law, and that the appeal, which was filed on December 16, 2005, had been timely filed). .

. We note that a probate court may transfer a pending contest to the juvenile court for determination under § 26-10A-24(e), which states: “On motion of either party or of the court, a contested adoption hearing may be transferred to the court having jurisdiction over juvenile matters.”

. In deciding whether the probate court properly transferred the adoption proceeding, we have not considered whether the probate court correctly decided the father’s contest, because that issue is not before us in this petition.