BOLIN, Justice
(concurring specially).
Although I concur with this Court’s decision to quash the writ of certiorari previously issued in this case, I write specially concerning an area of adoption law that I believe was lost in the shuffle of the peculiar facts that followed the two mandamus petitions to the Alabama Court of Civil Appeals in Ex parte W.L.K., 175 So.3d 652 (Ala.Civ.App.2015)(“W.L.K., I”), and Ex parte W.L.K., 222 So.3d 357 (Ala.Civ.App.2015) (“W.L.K. II”).
Facts and Procedural History
In W.L.K. I, W.L.K. (“the father”) sought a writ of mandamus prohibiting the transfer to the Jefferson Juvenile Court of an adoption proceeding brought in the Jefferson Probate Court by T.C.M. and C.N.M. (“the prospective adoptive parents”) and requiring that the probate court dismiss the adoption proceeding pursuant § 26-10A-24(d), Ala. Code 1975, and vacate its interlocutory order awarding temporary custody of the child to the prospective adoptive parents, The Court of Civil Appeals in W.L.K. I ordered the probate court to rescind its order transferring the adoption proceeding from the probate court to the juvenile court and to enter an order complying with § 26-10A-24(d) and § 26-10A-24(h), Ala. Code 1975. The probate court failed to comply with the Court of Civil Appeals’ directives in W.L.K. I, and the father thereafter petitioned the Court of Civil Appeals for a writ of mandamus directing the probate court to enter a judgment dismissing the adoption proceeding. The Court of Civil Appeals granted the petition and instructed the probate court to enter an order dismissing the adoption proceeding. W.L.K. II. We granted the prospective adoptive parents’ petition for a writ of certiorari.
The Court of Civil Appeals set forth the following factual and procedural history in W.L.K, I:
“W.L.K. (‘the father’) and S.F. (‘the mother’) were involved in a relationship between April and July -2012; they lived together in the father’s house in Middle-burg, Florida, during that period. The mother became pregnant early in the relationship, and she and the father had begun preparing for the baby by purchasing baby items. However, the mother left the father in July 2012, and, after she broke into the father’s house and stole several items, the father swore out a warrant against her. The mother was arrested, and, after that, the father lost contact with her. In December 2012, the father, who is in the United States Navy, contacted an attorney in the Judge Advocate General [office] about his situation; that attorney referred the father to a nonmilitary attorney, who assisted the father by instituting a paternity and custody action in a Florida court in January 2013. The father registered with the putative father registry in Florida. The father attempted to locate the mother at nearby hospitals on January 18, 2013, the expected date of delivery. However, the father was unable to locate the mother.
*362 “On January 9, 2013, the mother gave birth to M.M. (‘the child’) in Montgomery, Alabama. The mother had consented to an adoption of the child by T.C.M. and C.N.M. (‘the prospective adoptive parents’), who were present at the birth and who took the child home from the hospital. On January 29, 2013, the prospective adoptive parents filed a petition to adopt the child in the Jefferson Probate Court.
“The father first learned of the birth of the child in Alabama on March 1, 2013. After he was served with an amended petition to adopt the child oh March 25, 2013, and upon the advice of his Florida counsel, the father sought legal counsel in Alabama. He filed a contest to the adoption petition and a motion to dismiss the adoption petition on April 11, 2013.
“As required by Ala. Code 1975, § 26-10A-24(a), the probate court held a contested hearing on the father’s contest to the adoption petition on September 26, 2013. At issue was whether the father had impliedly consented to the child’s adoption pursuant to the theory of ‘pre-birth abandonment,’ under which consent to an adoption may be implied based on abandonment if a father fails, ‘with reasonable knowledge of the pregnancy, to offer financial and/or emotional support for a period of six months prior to the birth.’ Ala. Code 1975, § 26-10A-9(a)(1). After hearing the testimony of the father and T.C.M., the probate court entered an order on March 19, 2014, concluding that the father had not impliedly consented to the adoption and specifically rejecting the contention that the father’s conduct had amounted to an abandonment of the mother during her pregnancy. The order set a hearing for June 12, 2014, ‘to determine the best interest of [the] child.’
“On April 1, 2014, the prospective adoptive parents filed a motion, purportedly pursuant to Rule 59, Ala. R. Civ. P., seeking to have the probate court amend its judgment. The father filed a motion seeking to have the probate court dismiss the adoption proceeding as required by § 26-10A-24(d). The probate court purported to deny both motions on July 22, 2014. Also on July 22, 2014, the probate court entered an order stating that, on its own motion, it was transferring the adoption proceeding to the Jefferson Juvenile Court pursuant to § 26-10A-24(e).”
W.L.K. I, 175 So.3d at 654-55.
The father had petitioned the Court of Civil Appeals for a writ of mandamus, seeking an order prohibiting the transfer of the adoption proceeding from the probate court to the juvenile court; an order requiring the probate court to dismiss the adoption proceeding as he said was mandated by § 26-10A-24(d); and an order requiring the probate court to vacate its interlocutory order awarding temporary custody of the child to the prospective adoptive parents.
Relying upon § 26-10A-24(d), the father argued that the probate court was required to dismiss the adoption proceeding following the contested hearing of September 26, 2013, in which the probate concluded that the father had not impliedly consented to the adoption of the. child on the theory of prebirth abandonment. Section 26-10A-24(d) provides:
“(d) After hearing evidence at a contested hearing, the court shall dismiss the adoption proceeding if the court finds:
“(1) That the adoption is not in the best interests of the adoptee.
“(2) That a petitioner is not capable of adopting the adoptee.
*363 “(3) That a necessary consent cannot be obtained or is invalid.
“(4) That a necessary consent may be withdrawn. Otherwise the court shall deny the motion of the contesting party.”
(Emphasis added.) In transferring the adoption proceeding from the probate court to the juvenile court, the probate court expressly relied upon § 26-10A-24(e), which provides that, “[o]n motion of either party or of the court, a contested adoption hearing may be transferred to the court having jurisdiction over juvenile matters.” However, the Court of Civil Appeals correctly noted that transfer of the adoption proceeding under § 26-10A-24(e) was not proper in this case because the probate court had already held the contested hearing when it entered its July 22, 2014, order transferring the adoption proceeding to the juvenile court.
However, the prospective adoptive parents contended that § 26-10A-3, Ala. Code 1975, provided a basis for the probate court’s July 22, 2014, order transferring the adoption proceeding to the juvenile court. Section 26-10A-3 provides that “[i]f any party whose consent is required fails to consent or is unable to consent, the proceeding will be transferred to the court having jurisdiction over juvenile matters for the limited purpose of termination of parental rights.” Therefore, the prospective adoptive parents argued to the Court of Civil Appeals that, pursuant to § 26-10A-3, the probate court properly transferred the adoption proceeding to the juvenile court for that court to consider the termination of the father’s parental rights. The Court of Civil Appeals rejected this argument, concluding that the transfer of the adoption proceeding to the juvenile court was not proper under either § 26-10A-24(e) or § 26-10A-3. The Court of Civil Appeals reasoned as follows:
“At first blush, it appears that § 26-10A-24(d) and § 26-10A-3 conflict. One statute, § 26-10A-24(d), directs the probate court to dismiss the adoption proceeding if, after a contested hearing, it concludes that, among other things, ‘consent cannot be obtained or is invalid.’ The other statute, § 26-10A-3, indicates that, when a parent ‘fails to consent or is unable to consent,’ the proceeding should be transferred to the juvenile court for the limited purpose of considering termination of parental rights.
“We are aware that this court and our supreme court have indicated that the transfer language contained in § 26-10A-3 mandates transfer to the juvenile court of adoption proceedings lacking implied or express consent from a parent. Ex parte A.M.P., 997 So.2d [1008] at 1018 [ (Ala.2008) ] (‘It is only when there is no express or implied consent or relinquishment from a parent of the adoptee that the mandatory transfer portion of § 26-10A-3 applies.... When applicable, this transfer provision is mandatory....’); R.L. v. J.E.R., 69 So.3d 898, 901 (Ala.Civ.App.2011) (‘The mother refused to consent to the adoption; therefore, pursuant to § 26-10A-3, the probate court was required to transfer the matter to the court having jurisdiction to determine whether the mother’s parental rights were due to be terminated.’). In Ex parte A.M.P., our supreme court further opined that, ‘[w]hen § 26-10A-3 is read in para materia with § 26-10A-9, it is clear that if the probate court finds that the evidence does not prove implied consent ..., then the probate court must transfer the case to juvenile court for a determination of whether to terminate parental rights.’ Ex parte A.M.P., 997 So. 2d at 1019. However, our supreme court did not consider the language of § 26-10A-24(d) in its analysis in Ex parte A.M.P., and neither Ex *364 parte A.M.P. nor R.L. involved the resolution of an adoption contest in favor of the objecting parent under § 26-10A-24(d). Thus, we are presented with a question that cannot be answered by reliance on those- cases.
[[Image here]]
“Our consideration of the entire Alabama Adoption Code, Ala. Code 1975, § 26-10A-1 et seq., given the principles of statutory construction, convinces us that § 26-10A-3 and § 26-10A-24(d) each have specific fields of operation. In a situation in which a probate court has resolved a contest in favor of the parent objecting to the adoption, the plain language of § 26-10A-24(d) must control. That statute addresses a specific form of hearing, held in an adoption proceeding, at which a contest to an adoption—including a contest based on an argument that an express or an allegedly implied consent is invalid—is determined. See § 26-10A-24(a)(3) (stating that one issue a probate court may determine at a contested hearing is ‘[wjhether an actual or implied consent or relinquishment to the adoption is valid’). Moreover,, although, according to the prospective adoptive parents, § 26-1OA-3 appears-to require the transfer of an -adoption proceeding in every situation where a parent has failed to give his or her consent, enforcing the transfer provision contained in § 26-10A-3 after a parent has successfully contested the adoption would leave no field of operation for the requirement in § 26-10A-24(d) that the adoption proceeding be dismissed after a successful contest. Enforcing § 26-10A-24(d) and requiring dismissal of an adoption proceeding after a successful contest, however, leaves room for the operation of § 26-10A-3 in those adoption proceedings in which a parent does not mount a contest to the adoption but fails to consent or is unable to do so. Such a construction of the two provisions is supported by the language used in the statutes, and. it also meets our duty ‘ “to harmonize and’ reconcile all parts of a statute so that effect may be given to each and every part,” ’ Hays [v. Hays], 946 So.2d [867] at 877 [ (Ala.Civ.App. 2006) ] (quoting Leath v. Wilson, 238 Ala. 577, 579, 192 So. 417, 419 (1939)).
, “Because we have concluded that the juvenile court’s July 22, 2014, order transferring the adoption proceeding to the juvenile court is .not proper under either § 26-10A-24(e) or § 26-10A-3, we grant the petition for the writ of mandamus and order the probate court to rescind its July 22, 2014, order transferring the adoption proceeding to the juvenile court and to comply with § 26-10A-24(d) and § 26-10A-24(h).[1]”
W.L.K. I, 175 So.3d at 657-59. The Court of Civil Appeals expressly noted: “In deciding whether the probate court, properly transferred the adoption proceeding, we have not considered, whether the probate court correctly decided the father’s contest, because that issue [was] not before us in [the] petition.” W.L.K. I, 175 So.3d at 659 n. 3.
The father also asked the Court of Civil Appeals to order the probate court to vacate its interlocutory order awarding temporary custody of the child to the prospective adoptive parents. The father argued *365 that, because he did not consent to the adoption of the child, the probate court never acquired jurisdiction to enter the interlocutory custody order. The Court of Civil Appeals rejected that argument, stating:
“[W]hen the issue of consent is challenged, such as when a parent attempts to withdraw consent or when a parent contests an implied consent, the probate court does not automatically lose jurisdiction over the proceeding. Instead, it is called upon to determine that issue, because the preadoptive relationship has created a res to which jurisdiction has attached. Id. Furthermore, the Adoption Code provides that the probate court ‘may enter further orders concerning the custody of the adoptee pending appeal,’ Ala. Code 1975, § 26-10A-26(b), indicating that the probate court’s jurisdiction over an adoptee’s custody is not terminated by the entry of a final order in that court.
“At present, the probate court has not concluded its proceedings in this matter. Once it complies with this court’s directive and enters a final judgment in this case, the prospective adoptive parents will likely appeal, as they have attempted an appeal from the interlocutory order under review. The probate court may, pursuant to § 26-10A-26(b), [Ala. Code 1975,] enter an order respecting the custody of the child at that time. Accordingly, we deny the father’s petition insofar as he requests that the probate court be ordered to set aside the interlocutory custody order.”
W.L.K. I, 175 So.3d at 659-60.
Thereafter, the probate court set a hearing in the adoption proceeding for July 9, 2015. On July 8, 2015, the prospective adoptive parents moved the probate court to reopen the issue of the father’s implied consent to the adoption. At the hearing on July 9, 2015, the probate court stated that it was authorized, pursuant to W.L.K. I, to hear evidence regarding the best interests of the child relative to a determination of custody! The father objected, stating that once the probate court determined that the father did not give his implied consent to the adoption of the child, the probate court lost its jurisdiction to act other than to assess costs pursuant to § 26-10A-24(h) and to enter an order dismissing the adoption proceeding pursuant to '§ 26-10A-24(d). The probate court overruled the father’s objection and proceeded to take evidence relative to the best interests of the child. The probate court did not complete the taking of evidence and-determined that the hearing would continue at a later date.
However, on July 23, 2015, the father again petitioned the Court of Civil Appeals for a writ of mandamus directing the probate court to enter an order dismissing the adoption proceeding. In granting the petition and ordering the probate court to dismiss the adoption proceeding, the Court of Civil Appeals noted that the- probate court had failed to comply with its directive “to complete the ministerial task of entering a judgment dismissing ‘the adoption proceeding as required by § 26-10A-24(d) because, based on the findings and conclusions set out in the probate court’s March 2014 order, the adoption contest had been decided in favor of the father.” W.L.K. II, 222 So.3d at 359.
The prospective adoptive parents petitioned this Court for a writ of certiorari, which we granted. After reviewing the record, this Court now quashes the writ. -I note that the Court of Civil Appeals’ decision in W.L.K. I addresséd the issue of the validity of the transfer of the adoption proceeding from the probate court to the juvenile court. Once the Court of Civil Appeals determined in W.L.K. I that the *366 transfer was improper, its express order to the probate court to rescind its July 22, 2014, order transferring the adoption proceeding to the juvenile court and to comply with § 26-10A-24(h) and § 26-10A-24(d) became the law of the case, and the probate court was required to follow that mandate. Ex parte Alabama Power Co., 431 So.2d 151 (Ala.1983). In my opinion, the prospective adoptive parents’ argument that the probate court’s order was interlocutory because there has been no appellate review of the probate court’s order on the issue of implied consent was not well taken because the only issue presented to the Court of Civil Appeals to this point is the validity of the transfer from probate court to juvenile court. The specific issue of the validity of implied consent has yet to be put before the Court of Civil Appeals. See W.L.K. I, expressly noting that the issue of implied consent was not before that court.
Discussion
I submit that all the probate court actually did following the hearing on the father’s contest to the adoption in this case was to determine that the father had not impliedly given his consent to the child’s adoption based on the theory of “prebirth abandonment.” It was only when that order was entered that, pursuant to the provisions of § 26-10A-24(d)(3), it was judicially determined that neither an express, 1.e., written, consent nor an implied consent had been given by the father. However, the noun “consent” is not the only key word in § 26-10A-24(d)(3);[2] the second key word—just as important as “consent”—contained in this section is the qualifying adjective “necessary.” Had the contest been denied by the probate court, it would have satisfied the requirement of a “necessary” consent, because consent would have been found to have been impliedly given by the father. But a finding that an implied consent was not given still begs the question as to whether such consent was necessary to begin with—a determination not known by either the probate court or the parties in this proceeding until the contest was upheld.
Section 26-10A-10, Ala. Code 1975, provides that, “[njotwithstanding the provisions of § 26-10A-7 [Persons from Whom Consents or Relinquishments are Required], the consent or relinquishment of the following persons shall not be required for an adoption: (1) A parent whose rights with reference to the adoptee have been terminated by operation of law in accordance with the Alabama Child Protection Act, [Ala. Code 1975,] Sections 26-18-1 through 26-18-101.” (Bracketed language and emphasis added.) A permissible, if indeed not mandatory upon request, next step after the probate court found that no implied consent had been given is found in § 26-10A-3, which deals with jurisdiction over proceedings brought under the Alabama Adoption Code. This section states that “[i]f any party whose consent is required fails to consent or is unable to consent, the proceedings will be transferred to the court having jurisdiction over juvenile matters for the limited purpose of termination of parental rights.” (Emphasis added.) See Ex parte A.M.P., 997 So.2d 1008, 1018 (Ala.2008)(“It is only when there is no express or implied consent or relinquishment from a parent of the adop-tee that the mandatory transfer portion of § 26-10A-3 applies.... When applicable, this transfer provision is mandatory .... ”). There is no requirement that a transfer under § 26-10A-3 be initiated before a contest is filed; indeed, the petitioners for adoption would have no way of *367 knowing whether a contest would be both filed and successful, and therefore it could never be known at the outset whether a consent will be “necessary.” Both § 26-10A-24(d) and § 26-10A-3 each have independent separate fields of operation. There is no inconsistency between those two sections that would require reading them in para materia to give them both effect.
After a successful adoption contest on the ground of implied consent is concluded, there is still work for the probate court to do before a dismissal should be ordered pursuant to § 26-10A-24(d). There are at least two steps left in such scenario: First, unless waived by the parties, a transfer to the juvenile court for the limited purpose of the potential termination of the non-consenting parent’s parental rights to the adoptee (if the parental rights are terminated by the juvenile court, a dismissal by the probate court is not in order due solely to § 26-10A-24(d)(3), because the consent is no longer necessary and, if the parental rights are not terminated, then the adoption petition cannot be granted, and dismissal is proper); and second, in the event that parental rights are not terminated for the non-consenting parent and the adoption is due to be denied, the probate court, pursuant to § 26-10A-24(h), “unless just cause is shown otherwise by the contestant, shall issue an order for the reimbursement to the petitioner or petitioners for adoption for all medical and living expenses incidental to the care and well-being of the minor child for the time the child resided with the petitioner or petitioners for adoption.” (Emphasis added.)
In conclusion, we may only wish for the judgment of Solomon. The child involved in these proceedings, having been born on January 9, 2013, is nearly four years of age now and has been in the home of the prospective adoptive parents since they took the child home from the hospital. The great majority of adoptions do not result in protracted litigation, and the result is the creation of a new family unit. However, the rights both of birth parents as well as of adoptive parents must be safeguarded when a dispute arises, which generally delays reaching the correct legal result. While the delay continues, an adoptee, and particularly an infant or a child of tender years, continues to grow day by day. There are always at least two losers in matters such as this one—'first, either the birth parent who loses the comfort and companionship of his or her biological child during the period of litigation or, alternatively, the adoptive parents, who have received the child into their home and loved and nurtured the child as their own; but second, and infinitely the most important, the child/adoptee, who generally has no knowledge of or say so in the legal proceedings.
To be sure, both legislators and jurists, individually or collectively, do not possess Solomonic wisdom, but surely grown-ups can fashion a better way to protect the best interests of a child, which should always be uppermost in both our thoughts and in our laws.
Stuart, J., concurs.

. Section 26-10A-24(h) provides:
"Where there is a contested case hearing, if the adoption is denied, then the probate court or court of competent jurisdiction, unless just cause is shown otherwise by the contestant, shall issue an order for reimbursement to the. petitioner or petitioners for adoption for all medical and living expenses incidental to the care and well being of the minor child for the time the child resided with the petitioner or petitioners fo_r adoption."

. Section 26-10A-24(d)(3) states that, "[ajfter hearing evidence at a contested hearing, the [probate] court shall dismiss the adoption proceeding if the court finds ... [t]hat a necessary consent cannot be obtained or is invalid.”