THOMAS, Judge.
This is the seventh time these parties-W.L.K. ("the father") and T.C.M. and C.N.M. ("the prospective adoptive parents")-have appeared before this court seeking review of one or another court's orders respecting the custody of M.M. ("the child"). See Ex parte W.L.K., 175 So.3d 652 (Ala. Civ. App. 2015) (plurality opinion) (" W.L.K. I"); T.C.M. v. W.L.K. (No. 2130936, February 27, 2015), 206 So.3d 593 (Ala. Civ. App. 2015) (table) (appeal dismissed); Ex parte T.C.M. (No. 2140717, June 30, 2015), 212 So.3d 241 (Ala. Civ. App. 2015) (table) (petition denied); Ex parte W.L.K., 222 So.3d 357 (Ala. Civ. App. 2015) (" W.L.K. II") (ordering the Jefferson Probate Court to enter an order dismissing the adoption action in compliance with W.L.K. I ); T.C.M. v. W.L.K., 208 So.3d 39 (Ala. Civ. App. 2016) (" T.C.M. II") (determining that the Jefferson Juvenile Court could not enter a pickup order directing that the child be removed from the custody of the prospective adoptive parents); Ex parte T.C.M., 231 So. 3d 330 (Ala. Civ. App. 2016) (table) (petition dismissed as moot); and T.C.M. v. W.L.K., 231 So.3d 238 (Ala. Civ. App 2016) (released today).
Facts and Procedural History
The facts underlying this controversy were outlined in T.C.M. II, 208 So.3d at 40-43 :
*240 "The father and S.F. ('the mother'), who were residents of Florida, were involved in a relationship between April and July 2012. W.L.K. I, 175 So.3d at 654. They conceived the child during that period. Id. The relationship ended before the birth of the child, and the father lost contact with the mother. Id. The father registered with the putative father registry in Florida. Id. He sought the advice of an attorney and instituted a paternity action in Florida in January 2013. Id. He also attempted to locate the mother at nearby hospitals on January 18, 2013, the expected date of delivery. Id. However, the father was unsuccessful in his efforts at locating the mother and the child. Id. at 655.
"On January 9, 2013, the mother gave birth to the child in Montgomery, Alabama. Id. The mother had consented to an adoption of the child by the prospective adoptive parents. Id. The prospective adoptive parents were present at the birth and took the child home from the hospital. Id. They instituted an adoption action in the Jefferson Probate Court ('the probate court') on January 29, 2013. Id. As required by Ala. Code 1975, § 26-10A-18, the probate court entered an interlocutory custody order awarding the prospective adoptive parents custody of the child pending the final judgment in the adoption action.
"The father learned in March 2013 that the child had been born in Alabama. Id. He was served with the adoption petition, and, upon the advice of his Florida counsel, the father sought legal counsel in Alabama. Id. He then filed a contest to the adoption and a motion to dismiss the adoption action. Id.
"The probate court held a trial on the father's adoption contest. Id.'At issue was whether the father had impliedly consented to the child's adoption pursuant to the theory of "prebirth abandonment," under which consent to an adoption may be implied based on abandonment if a father fails, "with reasonable knowledge of the pregnancy, to offer financial and/or emotional support for a period of six months prior to the birth." ' Id. (quoting Ala. Code 1975, § 26-10A-9(a) ). On March 19, 2014, the probate court entered a judgment determining that the father had not impliedly consented to the adoption. Id. However, instead of dismissing the adoption action as required by Ala. Code 1975, § 26-10A-24(d), the probate court, on July 22, 2014, entered an order stating that, on its own motion, it was transferring the adoption action to the Jefferson Juvenile Court ('the juvenile court') pursuant to § 26-10A-24(e). Id. The father filed a petition for the writ of mandamus challenging the probate court's order transferring the adoption action to the juvenile court. Id. This court determined that the probate court could not transfer the adoption action and instead that the probate court was required to dismiss the adoption action under § 26-10A-24(e). W.L.K. I, 175 So.3d at 658.
"Despite our instructions in W.L.K. I, the probate court did not enter an order dismissing the adoption action pursuant to § 26-10A-24(e). W.L.K. II, 222 So.3d at 359. The father again filed a petition in this court seeking a writ of mandamus to compel the probate court to enter the order dismissing the adoption action. Id. We granted that petition. Id. After we overruled their application for rehearing, the prospective adoptive parents filed a petition for certiorari review of that decision in the Alabama Supreme Court; their certiorari petition was granted on March 2, 2016 ....[1]
"Meanwhile, in November 2014, the prospective adoptive parents filed a dependency *241 and termination-of-parental-rights action in the juvenile court; that action was assigned case no. JU-14-2361 ('the TPR action'). The juvenile court set a trial in the TPR action for July 2015, and the prospective adoptive parents sought a stay of the proceedings in the TPR action in the juvenile court. The juvenile court denied the motion for a stay, and the prospective adoptive parents filed in this court a petition for the writ of mandamus seeking an order requiring the juvenile court to stay the proceedings based on Ala. Code 1975, § 6-5-440, which bars a party from prosecuting two actions for the same cause against the same party in the courts of this state.[2] We denied the petition by order. Ex parte T.C.M. (No. 2140717, June 30, 2015), 212 So.3d 241 (Ala. Civ. App. 2015) (table). The TPR action was later dismissed by the juvenile court on the motion of the prospective adoptive parents.
"In October 2015, the father filed a petition in the juvenile court seeking to establish his paternity of the child and requesting an award of sole custody of the child; that action was assigned case no. CS-15-901120 ('the custody action'). The father named as a defendant only the mother. The juvenile court held a trial in the custody action, after which it entered a judgment on November 3, 2015, determining paternity and awarding the father custody of the child. On that same day, the juvenile court also entered a pickup order, which directed law enforcement to take into custody the child, who the order stated was residing with the prospective adoptive parents, and to deliver the child to attorneys for the father so that the child could be transported to the father's residence.
"The prospective adoptive parents filed in the custody action a motion that they entitled 'Motion to Alter, Amend, or Vacate; Motion to Stay.' That motion indicated that counsel for the prospective adoptive parents was making a limited appearance to contest jurisdiction. The prospective adoptive parents alleged that they had custody of the child by virtue of the interlocutory order awarding custody to the prospective adoptive parents entered by the probate court in the adoption action. They argued in their motion that the juvenile court lacked jurisdiction over them because they had not been parties to the custody action and that the juvenile court therefore lacked jurisdiction to 'make any orders affecting them or the ... child, specifically including, but not limited to, ordering them to relinquish custody of the ... child.' The juvenile court denied the prospective adoptive parents' motion and declined to stay enforcement of its pickup order. The prospective adoptive parents then filed a petition for the writ of prohibition or, in the alternative, mandamus and a request for a stay in this court on October 29, 2015. In their petition, the prospective adoptive parents sought a writ directed to the juvenile court requiring it to vacate its custody order and the pickup order and to acquire jurisdiction over the prospective adoptive parents before entering further orders affecting the custody of the child. This court granted a stay of the juvenile court's pickup order on October 30, 2015.
"_____________________
"[1] Rule 21(e)(3), Ala. R. App. P., provides that, if a party to a petition for the writ of mandamus seeks rehearing of the decision issued on the petition in a court of appeals, review of the decision must be by petition for the writ of certiorari under Rule 39, Ala. R. App. P. Rule 41(b), Ala. R. App. P., states that '[t]he timely filing of a petition for certiorari *242 in the Supreme Court shall stay the issuance of the certificate of judgment by the courts of appeals, which stay shall continue until the final disposition by the Supreme Court.' It is well settled that a trial court (or, in the present case, the probate court) lacks jurisdiction to enter any order or judgment in a matter under review until after an appellate court issues its certificate of judgment. See Veteto v. Yocum, 792 So.2d 1117, 1119 (Ala. Civ. App. 2001). Thus, the interlocutory custody order of the probate court vesting custody in the prospective adoptive parents still remains in effect.
"[2] Section 6-5-440 reads:
" 'No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times.' "[1 ]
In T.C.M. II, we first considered whether the petition for the writ of mandamus filed by the prospective adoptive parents was the appropriate vehicle for review of the juvenile court's pickup order. T.C.M. II, 208 So.3d at 43. We explained that, although the prospective adoptive parents were not bound by the juvenile court's order awarding custody to the father in the custody action, that court's pickup order required them to yield their custodial rights to the child, which, at that time, arose from the still valid interlocutory custody order entered by the probate court in the adoption action. Id. Because the prospective adoptive parents would have been subject to contempt or other sanctions had they disobeyed the pickup order, we concluded that the pickup order was "sufficiently injunctive in nature to provide the prospective adoptive parents the right to seek review of that order." Id. Thus, we concluded that the petition for the writ of mandamus filed by the prospective adoptive parents should be treated as an appeal from an injunction. Id.
We then addressed the authority of the juvenile court to enter the pickup order. Although we agreed that the juvenile court had had the authority to conduct proceedings in the custody action, id. at 44, we concluded that the juvenile court did not have the authority to "enjoin the operation of an interlocutory custody order entered by the probate court ...." Id. at 45. In our discussion, we explained that the probate court had had jurisdiction over the adoption action, that it had assumed jurisdiction first, and that a probate court's adoption judgment could be set aside only by a probate court. Id. at 44-45. We explained that, until such time as the probate court concluded the adoption action and the interlocutory order of custody was no longer valid, the juvenile court could enter no order requiring that the child be placed in the custody of the father. Id.
The probate court, in compliance with our directives in W.L.K. I and W.L.K. II, entered an order dismissing the adoption petition on October 3, 2016, after the prospective adoptive parents' petition for the writ of certiorari in W.L.K. II was denied by the Alabama Supreme Court. See Ex parte T.C.M., 222 So.3d 360 (Ala. 2016). On October 12, 2016, the father filed in the custody action in the juvenile court an "ex parte petition to rescind stay and for custody," in which he requested that the juvenile court enter an order awarding him custody of the child because, he alleged, the probate court's October 3, 2016, judgment *243 had terminated the interlocutory order under which the prospective adoptive parents held custody of the child. On that same day, the juvenile court entered a pickup order authorizing law-enforcement officers to remove the child from the residence of the prospective adoptive parents.
On October 14, 2016, the prospective adoptive parents filed in the juvenile court a "limited notice of appearance and motion to dismiss or alternatively, motion to alter, amend or vacate" the pickup order. In that motion, the prospective adoptive parents asserted numerous arguments, including that the father did not pay a filing fee to institute an action, that the juvenile court had no personal jurisdiction over them, that they had not been served with process, that the juvenile court had denied them due process, and that the probate court retained primary jurisdiction over the custody of the child pending their appeal of the probate court's judgment. The prospective adoptive parents also filed a motion seeking the recusal of the juvenile-court judge.
The prospective adoptive parents filed their petition for the writ of mandamus directed to the pickup order on October 17, 2016; that petition was docketed as case no. 2160031. They also requested a stay of the pickup order, which this court granted. This court entered an order treating the prospective adoptive parents' petition for the writ of mandamus as an appeal, as we had in T.C.M. II.
On October 24, 2016, the father filed a petition for the writ of habeas corpus in the custody action. The record does not indicate that the juvenile court entered an order on the habeas petition. The juvenile court held a hearing on the pending motions on October 27, 2016, at the conclusion of which it permitted the parties to submit proposed orders. The prospective adoptive parents, aware that their motion to alter, amend, or vacate the pickup order had been denied by operation of law on October 28, 2016, see Rule 1(B), Ala. R. Juv. P., and Rule 59.1(dc), Ala. R. Civ. P., filed a notice of appeal on November 10, 2016; that appeal was assigned case no. 2160131 and was consolidated with case no. 2160031. On November 14, 2016, the juvenile court entered an order purporting to deny the prospective adoptive parents' motion to alter, amend, or vacate the pickup order and denying their motion to recuse.[2]
Analysis
The prospective adoptive parents again contest the juvenile court's authority to enter the pickup order. They contend that the father did not properly institute a new action seeking to enforce the juvenile court's October 2015 custody judgment because he did not pay a filing fee and that the October 2015 custody judgment cannot be enforced against them because they were not parties to the custody action. The father asserts that he did pay a filing fee in the juvenile court, but he also contends that no filing fee was necessary.
As we explained in T.C.M. II, the prospective adoptive parents are not bound by the October 2015 custody judgment. T.C.M. II, 208 So.3d at 43. That judgment awarded custody to the father only vis-à-vis the mother. Id. The fact that the probate court has entered a final judgment in the adoption action does not change that fact. Thus, the juvenile court cannot enforce the October 2015 custody *244 judgment against the prospective adoptive parents through a pickup order, and we instruct the juvenile court to set aside its October 2016 pickup order.[3]
The prospective adoptive parents also seek review of the juvenile court's order denying their motion to recuse. However, when the prospective adoptive parents filed their notice of appeal, the juvenile court had not yet entered its order denying that motion. Because a motion to recuse is not a postjudgment motion, that motion was not denied by operation of law, as was the prospective adoptive parents' motion to alter, amend, or vacate the pickup order. The prospective adoptive parents did not file a timely notice of appeal from the denial of the motion to recuse, and we therefore cannot consider the propriety of the juvenile court's order denying the motion to recuse.[4] D.L. v. T.A., 827 So.2d 127, 129 (Ala. Civ. App. 2002) ("A notice of appeal filed prematurely before a final judgment is entered has no effect and will not confer jurisdiction upon an appellate court.").
We have determined that the juvenile court cannot enter a pickup order to enforce the October 2015 custody judgment against the prospective adoptive parents; thus, the pickup order at issue in case no. 2160031 is reversed, and the cause is remanded with instructions to the juvenile court to set aside its October 2016 pickup order. Insofar as the prospective adoptive parents seek review of the denial of the motion to recuse in case no. 2160131, their appeal is dismissed. Insofar as the prospective adoptive parents seek review of the pickup order in case no. 2160131, the appeal is dismissed as moot.
2160031-REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman and Donaldson, JJ., concur.
Thompson, P.J., and Moore, J., concur in the result, with writings.
2160131-APPEAL DISMISSED.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.
THOMPSON, Presiding Judge, concurring in the result in case number 2160031.
I concur in the result in case no. 2160031. I know that this case has been particularly distressing and heart-wrenching for all parties involved, but, at the end of the day, it involves well-established principles of law.
When the adoption action was filed in the Jefferson Probate Court ("the probate court") in 2013, the probate court entered *245 an interlocutory order awarding custody of M.M. ("the child") to T.C.M. and C.N.M. ("the prospective adoptive parents"). After litigation, the probate court found that W.L.K. ("the father") had not impliedly consented to the adoption of the child. Ultimately, the probate court entered an order dismissing the adoption action. As has been noted,
" '[a]s a general rule, interlocutory orders become unenforceable upon a final judgment of dismissal.' Ex parte W.L.K., 175 So.3d 652, 661 (Ala. Civ. App. 2015) (citing Maddox v. Maddox, 276 Ala. 197, 199, 160 So.2d 481, 483 (1964) (discussing Duss v. Duss, 92 Fla. 1081, 111 So. 382 (1927) )). Generally, the dismissal of an action operates to annul previously entered orders, rulings, or judgments. See Ex parte Sealy, L.L.C., 904 So.2d 1230, 1236 (Ala. 2004) (quoting 27 C.J.S. Dismissal and Nonsuit § 39 (1959) ) (holding that a voluntary dismissal renders the proceedings a nullity and ' "carries down with it previous proceedings and orders in the action" '); McNairy v. McNairy, 416 So.2d 735, 736 (Ala. 1982) ('The motion to dismiss was granted by the circuit court, which also held for naught all prior orders of the probate court.'). See also 24 Am. Jur. 2d Dismissal § 89 (2008)."
K.L.R. v. K.G.S., 201 So.3d 1200, 1203 (Ala. Civ. App. 2016). Accordingly, when the adoption action was dismissed, the interlocutory custody award was dissolved and became unenforceable.
As Judge Moore notes in his writing in this matter, the father has filed a petition for a writ of habeas corpus in the Jefferson Juvenile Court (" the juvenile court"), which is separate from the actions involved in these appeals. Like Judge Moore, I, too, am reluctant to express an opinion on that pending matter. However, I wish to point out that, in crafting a judgment, a juvenile court has the discretion to require steps to ensure that the best interests of the child are protected and that, if a transition of custody is to take place, the transition of custody is conducted in a manner least likely to harm the child. See A.M.B. v. R.B.B., 4 So.3d 468, 470 (Ala. Civ. App. 2007) (matters of child custody are within the discretion of the trial court); Barber v. Lay, 384 So.2d 1095 (Ala. Civ. App. 1980) (holding that, when, after an ore tenus hearing, a trial court has rendered its judgment, this court presumes that the trial court correctly used its discretionary authority and determined the best interests of the child).
Moving forward with this matter, promoting the best interests of the innocent child who is the subject of these proceedings dictates that the parties work together toward a solution that ensures involvement of both the father and the prospective adoptive parents in the child's life. The child, who is now four years old, has always known the prospective adoptive parents as his parents. They have loved and nurtured him since his birth, and if he is removed from the only family he has known it will undoubtedly be a traumatic experience. At the same time, the father has been working through the legal systems of both Florida and Alabama to have his paternity declared and to obtain custody of the child since before the child's birth. I am sure the prolonged litigation has left all parties with frayed emotions and hard feelings. Perhaps mediation and/or counseling for the parties and the child can be ordered to assist them in dealing with the final outcome. The ultimate disposition of the custody of the child has been so drawn out that the courts should do what they can to alleviate as much of the trauma as possible.
*246 As to that portion of the main opinion dismissing the appeal in case no. 2160131, which involves both the pickup order addressed in case no. 2160031 and the juvenile court's order denying the prospective adoptive parents' motion to recuse, I concur.
MOORE, Judge, concurring in the result in case number 2160031.
I concur with that part of the main opinion dismissing the appeal in case no. 2160131, which involves both the pickup order addressed in case no. 2160031 and the order of the Jefferson Juvenile Court ("the juvenile court") denying the motion to recuse filed by T.C.M. and C.N.M. ("the prospective adoptive parents"). I concur in the result as to the remaining portion of the main opinion addressing the appeal in case no. 2160031.
On the authority of K.L.R. v. K.G.S., 201 So.3d 1200, 1203 (Ala. Civ. App. 2016) (citing, among other authorities, Ex parte W.L.K., 175 So.3d 652, 661 (Ala. Civ. App. 2015) (Moore, J., concurring in the result)), I agree with Presiding Judge Thompson that the final judgment entered by the Jefferson Probate Court ("the probate court") on October 3, 2016, dismissing the adoption petition, dissolved the interlocutory order awarding custody of M.M. ("the child") to the prospective adoptive parents. 237 So.3d at 245 (Thompson, P.J., concurring in the result in case no. 2160031). The prospective adoptive parents filed a motion to maintain custody of the child pending their appeal from the final judgment in the adoption action, see Ala. Code 1975, § 26-10A-26(b), but no order appears in the record in this appeal or in case no. 2160032, a related appeal, granting that motion. Hence, as of October 3, 2016, the prospective adoptive parents are holding custody of the child without a valid court order.
When a third party maintains custody of a child without a valid court order, a parent may petition an appropriate court for a writ of habeas corpus in order to recover custody of the child, see Danford v. Dupree, 272 Ala. 517, 518, 132 So.2d 734, 734 (1961), or may file a petition in equity requesting the court to settle any controversy over custody of the child. See Lumpkin v. Meeks, 263 Ala. 395, 397, 82 So.2d 535, 536 (1955). W.L.K. ("the father") filed a petition for a writ of habeas corpus in the juvenile court on October 24, 2106, naming the prospective adoptive parents as defendants, but that petition has not been adjudicated at this point, at least according to the records before this court. The father nevertheless obtained a pickup order from the juvenile court on October 12, 2016, directing law-enforcement authorities to obtain custody of the child and to deliver the child to the father. That pickup order was entered in a paternity and custody action previously prosecuted by the father solely against S.F. ("the mother"). See T.C.M. v. W.L.K., 208 So.3d 39 (Ala. Civ. App. 2016).
I agree with the main opinion that the October 12, 2016, pickup order is not enforceable against the prospective adoptive parents, who were not parties to the paternity and custody action and who were not afforded due process to contest the issuance of the order. In my opinion, any pickup order should be issued only after the juvenile court adjudicates the petition for a writ of habeas corpus,[5] which should afford the prospective adoptive parents the due process that, thus far, has been omitted by the juvenile court. Although I am reluctant to express any opinion on how *247 the habeas corpus proceeding should be resolved, I direct the parties and the juvenile court to Chandler v. Whatley, 238 Ala. 206, 189 So. 751 (1939), and Ex parte Terry, 494 So.2d 628 (Ala. 1986), opinions issued by our supreme court that contain the applicable guiding principles on the issue, in order that this custody controversy can be finally determined.

In this opinion, we use the same defined terms and designations we used in T.C.M. II.

Insofar as the juvenile court's November 14, 2016, order purported to rule on the previously denied postjudgment motion, the order was a nullity. See A.F. v. S.R., 209 So.3d 511, 514 (Ala. Civ. App. 2016) (explaining that an order entered after a postjudgment motion has been denied by operation of law is a nullity).

We note that, in addition to seeking the pickup order in the custody action, the father filed in the juvenile court a petition for the writ of habeas corpus, which is a proper method for seeking the return of the custody of a child based on a parent's superior right to that child. See, e.g., Danford v. Dupree, 272 Ala. 517, 518, 132 So.2d 734, 734 (1961) (explaining the burdens on the parties in a habeas proceeding seeking return of a child to the custody of the natural parent). The record reflects (1) that the habeas proceeding might not have been properly instituted as a new action with the payment of the required filing fee, (2) that the prospective adoptive parents were not served with the petition for the writ of habeas corpus, and (3) that the juvenile court did not have an evidentiary hearing on that petition. However, the juvenile court did not enter any order resolving that petition, and it appears that, if the habeas proceeding was properly instituted but the habeas petition was improperly filed in the custody action, the habeas proceeding might still be pending.

We note that the propriety of a ruling on a motion to recuse may be challenged by a petition for the writ of mandamus or by appeal. See Ex parte Crawford, 686 So.2d 196, 198 (Ala. 1996).

I note that the father could also amend his petition for a writ of habeas corpus to file a petition in equity to obtain custody of the child.